In the Interest of R.B., A Minor Child.

J.L., Mother, Appellant,

G.M., Father, Appellant.

No. 92–771.

Court of Appeals of Iowa.

Oct. 27, 1992.

James T. Peters of Ristvedt & Peters, P.C., Independence, for appellant mother.

Timothy G. Goen of Jenk & Goen, Dyersville, for appellant father.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Lou Walker, County Atty., for appellee State.

Mary Lou Tracey of Tracey & Tracey, guardian ad litem for child.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

A biological mother and a biological father appeal a trial court order terminating their parental rights to Redge Brown,[1] born September 9, 1986. We affirm.

---

1. R.B. are the child's initials. Redge Brown is   not his given name.

Redge's biological parents are divorced. When their marriage was dissolved, appellant mother received physical care. Both parents have remarried. In April 1990 Redge was removed from his mother's care and put in a foster care home because his stepfather abused him, and his mother, knowing of the abuse, had failed to protect him. Following a number of review hearings in December 1991, the State filed a petition to terminate the parental rights of both biological parents. The hearing was set for April 6, 1992. A one-day hearing was held on April 6, and when it became evident the matter could not be concluded, the hearing was rescheduled for April 16, 1992. The mother was present on the first day of trial but not the second day of trial. The juvenile court terminated the parental rights of both the mother and the father under Iowa Code section 232.116, which provides:

Grounds for termination.

1. Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:

\* \* \* \* \* \*

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

\* \* \* \* \* \*

e. The court finds that all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother first contends the juvenile court referee abused her discretion in refusing to continue the trial to allow the mother to testify, and that the mother's constitutional due process rights were violated when the juvenile court referee conducted a portion of the trial in the mother's absence.

■■■ A mother's or father's interest in maintaining the integrity of his or her family unit is protected by the Due Process Clause of the United States and the Iowa constitutions. *Alsager v. District Court of Polk County,* 406 F.Supp. 10, 22 (S.D.Iowa 1975). State intervention to terminate a parent-child relationship must be accomplished by meeting the requisites of the Due Process Clause. *See Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599, 606 (1982). Due process requires fundamental fairness in a judicial proceeding. *See Lassiter v. Department of Social Servs.,* 452 U.S. 18, 25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640, 648 (1981). A parent's right to have custody of his or her child should be terminated only with the utilizations of the required constitutional safeguards. *See Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923); *In re T.R.,* 460 N.W.2d 873, 875 (Iowa App.1990).

We do not, however, consider the mother's constitutional challenges because the only ground urged for continuance was the mother's lack of transportation.

■■■ We, therefore, look to whether the juvenile court referee abused her discretion in not granting the continuance. We consider the following factors:

(1) whether the motion was filed by the movant immediately upon learning of the problem;

(2) whether the reason for the motion is the movant's fault or negligence; and

(3) whether justice is more nearly obtained by granting the request.

■ A termination hearing involves the weighty issue of whether a court should sever biological ties. The issue of whether or not to legally sever the biological ties between parent and child is an issue of grave importance with serious repercussions to the child as well as the biological parents. The goal of a child in need of assistance proceeding is to improve parenting skills and maintain the parent-child relationship. When the State seeks termination, it is because the State has been unable to furnish the help necessary to allow the biological family to remain intact. The underlying issue in a termination action is whether the parent is beyond help. A termination hearing involves an extremely critical look at both the natural parents' parenting deficiencies and the services the State has provided the family. It is very difficult for a conscious decision maker to resolve these issues without the opportunity to hear the testimony of both parents where they both challenge the termination.

The mother was present for the first day of the hearing. Only the State's testimony was taken. The mother had been at all the other hearings. At the end of the first day, the State had not yet rested. The juvenile court referee entered an order continuing the hearing. The mother was aware of the date for the continued hearing.

When the mother's attorney presented the motion for continuance, it was urged on the ground the mother was not able to obtain transportation from Waterloo, where she lived, to Manchester, where the hearing was being held, a distance of about sixty miles. Because the continuance was not granted, the mother had no opportunity to present her own evidence, and her testimony is not available to us on our de novo review.

■ We recognize the need for speedy dispositions of matters involving child custody and the difficulty judicial officers frequently have in scheduling time to meet all demands. However, our review of the record is hindered by the absence of the mother's testimony. Clearly, a decision rendered after hearing the mother's testimony would be a more just decision. See Hawkeye Bank and Trust, Nat'l Assoc. v. Baugh, 463 N.W.2d 22, 26 (Iowa 1990); State v. Birkestrand, 239 N.W.2d 353, 360 (Iowa 1976) (the question of whether substantial justice will be more nearly obtained is a factor the courts need to consider in reviewing a motion for continuance). Injustice may appear when a court, for less than weighty reasons, denies a continuance and prevents a party from attendance at trial. See Hawkeye, 463 N.W.2d at 26; In re Estate of Rogers, 226 Iowa 183, 185–86, 283 N.W. 906, 907 (1939).

The pivotal question is whether the need for a continuance stemmed from the mother's fault of negligence. See Hawkeye, 463 N.W.2d at 26; Birkestrand, 239 N.W.2d at 360.

The mother had advance notice of the hearing. Her transportation problems were minimally communicated to her attorney who communicated her problems to the court and asked for a continuance in her behalf.

The distance the mother needed to travel was about sixty miles. There obviously was no adequate public transportation available between the two points. In assessing this issue, we must be certain not to view it from the perspective of a person who has adequate motor vehicles available to him or her. This mother lived at the poverty level and was dependent for transportation on an unreliable vehicle or friends. The mother had attended all the other hearings. The mother, however, made a minimal effort to communicate her transportation problems to her attorney. The juvenile court did not abuse its discretion in not granting a continuance to provide for the mother's testimony.

■ The biological father contends there is not clear and convincing evidence Redge cannot be returned to him. At the time of the removal, Redge was in his mother's custody. Redge's removal was because of his stepfather's abuse. There is no claim Redge was ever abused by his biological

father. Prior to removal, the child clearly recognized his biological father and identified with him.

The biological father had supervised visits during the time Redge was in the State's care, and the report of social workers who supervised the visits reported Redge enjoyed the visits with his father, was anxious for visits with his father, and was well behaved during visits with his father. The social workers further determined that the biological father showed love for Redge and there was bonding between Redge his biological father.

In July 1990, shortly after the child's removal, Cheryl–Aden Recker, a social worker with Lutheran Social Services who had been supervising the case for two months, recommended in a quarterly report, "For Redge's sake it is hoped that his father or grandparents will be considered a placement." Apparently there was not a move to implement this recommendation until February 1991, when a study was done of the father's home. Even after this recommendation was made, the father was only allowed supervised visitation.

The State contends the evidence about visitation was that the father had no ability to discipline Redge or control him. Unfortunately, in making these statements in its argument, the State has neglected to make any reference to where in the record or the appendix the evidence supporting these statements appear. In fact, in its response to the father's argument on the issue, the State makes only one reference in its argument to the record, and that reference is to the juvenile court's findings.

The State counsel is directed to Iowa Rule of Appellate Procedure 14(a)(5) and (14)(b) which provide directions on filing briefs and making reference to cited evidence. These sections provide in relevant part:

> An Argument.... The argument *shall* contain ... stated issues the contentions of appellant with respect to the issues presented and the reasons therefor, with citations to the authorities relied on and to the pertinent parts of the record in accordance with subdivision "g".... (Emphasis added).

Iowa R.App.P. 14(a)(5).

> (b) Appellee's Brief. The brief of appellee *shall* conform to the requirements of subsection "a"(1) to (6),.... (Emphasis added).

Iowa R.App.P. 14(b).

We have, therefore, had to make our own attempt to verify the factual arguments advanced by the State in its argument. While there is conflicting evidence on the success of the father's visitation, we do not find the State's summary of the evidence entirely accurate. We find the father has had alcohol related problems, including a driving while intoxicated charge.

The biological father and the stepmother are adequately parenting their own child. Redge will be a challenge for any parent, and we doubt that he could be successfully integrated into his father's home without services. The fact the father would need help in parenting Redge does not mean Redge cannot or should not be placed in his father's care. We are directed to assure that reasonable services are offered to keep from dividing families. No reasonable services were even provided to allow Redge to be in his father's care.

There was evidence that Redge's needs would be best served by being placed in a stable adoptive home with two good parents and without other children in the home. The juvenile court has relied in part on this fact in reaching its decision.

Redge clearly will present parenting problems for most any adoptive parent, and a reasonable conclusion is adoptive parents will need services to parent him. Redge has been abused. He has bonding to his biological family and his extended biological family. He has a below normal intelligence level and, among other things, has an attention-deficit hyperactivity disorder, a language disorder, and a developmental coordination disorder. While there is evidence some of Redge's problems might be helped with medication, no appointment was made for an evaluation until after the termination hearing. Redge is difficult to manage and is at a high level for abuse.

At the time of the hearing, Redge was having an escalation of his behavioral problems. The supervising worker sought to blame the escalation in Redge's problems on his dealing with problems in play therapy. Some of these problems are obviously the result of Redge's being in at least two foster homes.

There are a number of older children waiting for adoption. Redge will require adoptive parents who are willing to make a substantial commitment to help him with his problems. Termination carries with it no guarantee that Redge will find a home with two exceptional parents and no siblings.

The home study found the father was a likable individual who had been very cooperative. It also found the father had made important and positive changes in his life, such as reducing his drinking, involving himself with Parent Skill Development and keeping contact with his son. It did not recommend placement with the father because he had a history of problems related to alcoholism and he has not completed substance abuse treatment and he drinks when under stress. There were concerns about his wife's parenting ability, his motivation for wanting the child, his financial problems, and his failure to have a clean house. While the father had affection for the child, he did not have the necessary firmness. The home study did not address the issue of services that could be provided to allow Redge to be placed with his father, and in a March hearing when this report was presented to the court, the juvenile court's subsequent order failed to address the issue of services necessary to allow Redge to be placed with his father.

Redge has been in foster care for a substantial period. He obviously has suffered from his natural parents' separation. He has suffered substantially because of serious abuse inflicted on him by his stepfather. He has seen little stability in state care. He has been in at least two foster homes. He has had his care supervised by a number of workers who share conflicting opinions about his father's position in his life. His maternal grandparents have had a substantial impact on his life, and there is evidence he has strong bonds with them. They are not able to assume his care, and now feel it would be best if he were placed for adoption in a home some distance from where his natural parents live. His mother loves him, and he has strong feelings for her, but she has not been able to terminate her relationship with the stepfather who inflicted the abuse on Redge.

Clearly, Redge's father, despite his faults, has been the only constant and dependable person in Redge's life. From the record it is clear that Redge loves his father and Redge's father loves him. Redge's father has made a real effort to cooperate during these proceedings. Redge's father could only assume his custody with help. There is clear and convincing evidence supporting the termination. We affirm.

AFFIRMED.