**In the Interest of H.L.B.R., Minor Child.**

**K.R., Mother, Appellant.**

**No. 96–2041.**

Court of Appeals of Iowa.

May 29, 1997.

David Nadler, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Diane M. Stahle, Special Assistant Attorney General, and Denver Dillard, County Attorney, for appellee State.

James Holmes, Cedar Rapids, for minor child.

Considered by HABHAB, C.J., and SACKETT and CADY, JJ.

SACKETT, Judge.

The issue in this appeal is whether the juvenile court correctly terminated the parental rights of Kathy to her fourth child, Hakeem, born June 26, 1989. The question of Hakeem's paternity is not resolved.[1] A notice of the hearing was published. Joe appeared in the juvenile court claiming an interest in Hakeem.[2] Any parental rights he may have to Hakeem have been terminated. The order also terminated the parental rights of Cyrus and Willie and any other unknown father, finding they had abandoned Hakeem. No appeal has been taken from that part of the order terminating any birth father's rights. We affirm.

Kathy, while admitting there have been some deficiencies in her care of Hakeem, contends there was not clear and convincing evidence supporting the termination. She

1. Hakeem's birth certificate shows no father. No paternity testing was done.

2. Joe currently is incarcerated.

advances she was not offered reasonable services to correct her problems caring for Hakeem, and biases against her in the Department of Human Services have resulted in its failure to adequately address her problems. She further contends these biases have resulted in inaccurate reporting of evidence and opinions being advanced that are not supported by the evidence and have compounded the problems. She further contends the State failed to provide reasonable and necessary services to allow her to continue her relationship with her son. She also advances even if there is evidence for the State to meet its burden, the relationship between her and her son is so strong it would be detrimental to him to terminate the relationship.

The State contends the evidence does support termination and Kathy has been offered sufficient services. It denies the bonding between Hakeem and Kathy is sufficient to negate against termination. The State contends Hakeem will be best served by termination despite there being little or no evidence of any specific plans the State has for his future.

We review de novo. *In re A.Y.H.*, 508 N.W.2d 92, 94 (Iowa App.1993).

■ The State has the burden of proving the grounds for termination by clear and convincing evidence. *See In re T.A.L.*, 505 N.W.2d 480 (Iowa 1993). A parent has the right to due process and a fair trial when the State seeks to terminate parental rights. *In re R.B.*, 493 N.W.2d 897 (Iowa App.1992); *see also Alsager v. Iowa District Court of Polk County*, 406 F.Supp. 10, 22 (S.D.Iowa 1975). A parent's right to have custody of his or her child should be terminated only with the utilization of the required constitutional safeguards. *See Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923); *In re T.R.*, 460 N.W.2d

873, 875 (Iowa App.1990). The parent-child relationship is constitutionally protected. *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511, 519 (1978); *Wisconsin v. Yoder*, 406 U.S. 205, 233, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15, 35 (1972).

■ The issue of whether or not to legally sever the biological ties between parent and child is an issue of grave importance with serious repercussions to the child as well as the biological parents. *See R.B.*, 493 N.W.2d at 899. The goal of a child-in-need-of-assistance proceeding is to improve parenting skills and maintain the parent-child relationship. When the State seeks termination, it is because the State has been unable to furnish the help necessary to correct the parent's deficiencies. An underlying issue in a termination action is whether the parent is beyond help. A parent does not have an unlimited amount of time in which to correct his or her deficiencies. *See In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990).

The first of Kathy's four sons [3] was born when she was sixteen. Hakeem is the youngest. Hakeem lived with Kathy for four years following his birth.

There have been a number of findings Kathy denied Hakeem critical care. A review of the record shows these findings were the result of Kathy's lack of attention to the details of raising her son rather than any actual physical abuse she delivered. Kathy has been incarcerated on forgery and theft charges and parole violations. During her incarceration, poor choices were made regarding Hakeem's caregivers.[4] Kathy lives in poverty and has had relationships with a number of different men. On more than one occasion, they were responsible for the treatment of Hakeem that led to State intervention.

Twice Hakeem has been found to be a child in need of assistance. The first time, in

---

[3]. One child lives with his father's family; one child lives with friends of Kathy; and Kathy's parental rights to the third child have been terminated.

[4]. The record is not clear as to why, when it became apparent Kathy, who was Hakeem's only identified parent, was to be incarcerated, she was not provided the necessary social services to

assure a safe place for her child during her absence. Apparently there were voluntary services offered to Hakeem's caregiver. While Kathy is blamed for choosing an inappropriate caregiver, it is noted she was incarcerated while the caregiver cared for her son and she had no ability to supervise.

1990, he was found to be a child in need of assistance after he was left with a friend of his mother's. At the time, he had been in an automobile accident. Kathy was moving with a carnival. In February 1991 it was recommended Kathy have Hakeem returned to her despite the fact she had a chaotic life. It was then reported she creates her own family and she is capable of maintaining Hakeem and has several designated caregivers and does not leave him with just anyone. Furthermore, it was found Kathy cooperated with those providing assistance. The case was closed.

Shortly thereafter, Hakeem was briefly taken from his mother after she was arrested for interference with official acts and there was no custodian for him. He was returned and remained in her care until Kathy was incarcerated in June 1993. Kathy made her own provisions for Hakeem's care at that time. These care arrangements were not satisfactory. Hakeem was abused by his caregiver. Kathy made other arrangements for the child while she was in work release. The State again intervened.

In November 1994, Hakeem was again found to be a child in need of assistance. At the time, he was in a placement chosen by Kathy. Hakeem was not returned to Kathy's care. She has seen him only at visitations that were supervised.

In May 1996, the State sought termination of Hakeem's parental rights. Following a hearing, the juvenile court found there was clear and convincing evidence Hakeem could not be returned to a parent. The court further found clear and convincing evidence for termination under Iowa Code section 232.116(1)(e) and (f).

■ Kathy first contends there is no clear and convincing evidence Hakeem cannot be returned to his mother's care and there is no clear and convincing evidence supporting termination under section 232.116(1)(e) and (f).

The juvenile court made extensive findings both as to Kathy's care of Hakeem and her care of her older children. There have been numerous times when Kathy has denied the children what it termed "critical care." These occasions nearly always were acts of omission or lack of attention or supervision or entrusting care to others. There is little or no evidence Kathy has intentionally inflicted bodily harm on her children.

Evaluators indicate Kathy is immature and, though she does not pose a risk to her son because of intentional acts, she poses risks because of her situations and relationships. She is self-focused.

The persons whose job it has been to help Kathy regain custody of Hakeem are of the opinion she is not able to care for him. Kathy contends these persons in some instances were biased against her and arrived at negative conclusions concerning her behavior not supported by evidence. She further advances there were constant negative spins on incidents involving her and Hakeem.

The record is replete with the opinions of persons supervising the visitations that Kathy did not perform at the visitations as desired. She has refuted many of these opinions contending she was criticized unfairly. She points to an example where she was criticized for not bringing the proper trimmings to celebrate Hakeem's birthday though she did buy and bring him an expensive gift.

Kathy makes some valid arguments in this regard. It is difficult to assess a parent's skill at caring for a child through supervised visitation. Opinions advanced are those of the supervisor of the visitation based on his or her own value system of what is right and wrong in caring for a child. There are as many ideas about raising children as there are grandmothers and grandfathers. So-called experts on the issue disagree, as evidenced by the volumes of conflicting instructions written on the subject.

It is unfortunate trivial issues get in the way of the big issues. The only issue is whether the State has shown Kathy cannot provide Hakeem with a loving and safe environment. Kathy has not been able to restructure her lifestyle to make provisions for her children and give them a safe home. She has an unstable and chaotic lifestyle. She is unable to provide the stability Hakeem requires. *See In re T.D.C.,* 336 N.W.2d 738, 744 (Iowa 1983). She has been consistent

with visitation, and the visitation she has exercised has been satisfactory.

■ Hakeem has been out of her care for more than three years. Where there is conflicting evidence on some issues, we give consideration to the juvenile court on issues of credibility. The State met the necessary burden. There is clear and convincing evidence to support the termination. *See In re D.W.*, 385 N.W.2d 570 (Iowa 1986); *In re C.M.T.*, 433 N.W.2d 55 (Iowa App.1988); *In re R.M.*, 431 N.W.2d 196 (Iowa App.1988).

■ Kathy next contends the State did not use reasonable efforts to help her reclaim Hakeem. There is a requirement that reasonable services be offered to preserve the family unit. *See In re A.L.*, 492 N.W.2d 198, 201 (Iowa App.1992); *In re B.L.*, 491 N.W.2d 789, 791–93 (Iowa App.1992); *In re A.W.*, 464 N.W.2d 475, 478 (Iowa App.1990); *In re M.H.*, 444 N.W.2d 110, 113 (Iowa App.1989). A court is required to find reasonable efforts have been made to eliminate the need for removal before a removal is ordered. *See* Iowa Code § 232.102(4); *see also* 42 U.S.C. § 671(a)(15).

■ There is evidence Kathy challenged parts of the permanency plan and lodged a number of objections to it, including statements in the plan. The State had the obligation to make reasonable efforts, but it is the parent's responsibility to demand services if they are not offered prior to the termination hearing. *In re C.D.*, 508 N.W.2d 97, 101 (Iowa App.1993).

■ The core of the reasonable efforts mandate is that the child welfare agency must make reasonable efforts to prevent placement or to reunify families in each case. This is both a required element of each state's Title IV–E state plan and a condition of federal funding for individual foster care placements. 42 U.S.C. §§ 671(a)(15), 672(a)(2); *In re L.M.W.*, 518 N.W.2d 804, 806–07 (Iowa App.1994). Because federal law contains no elaborate definition of "reasonable efforts," the states have considerable discretion in meeting the requirement in individual cases. *Id.* Federal law does make it clear, however, the case plan for each child is an integral element of the reasonable ef-

forts implementation process. *Id.* The federal regulations implementing the reasonable efforts requirement mandate each child's case plan must contain a description of what services were offered and provided to prevent removal of the child from the home and to reunify the family. 45 C.F.R. § 1356.21(d)(4) (1990). In addition, federal law clearly requires that states provide a system of fair hearings to enable families whose request for services has been denied or not acted upon to seek review of the denial. 42 U.S.C. § 671(a)(12); Edna McConnell Clark Foundation, *Making Reasonable Efforts: Steps For Keeping Families Together* 47, 71 (19__).

■ Kathy has had an extensive series of services. The State has expended considerable financial resources on this case. Have the services been sufficient to meet the reasonable efforts test? They have not solved Kathy's problems. Clearly, the State has failed in helping Kathy. It is easy to blame the failure on Kathy; clearly, she shares blame. However, she is a woman who grew up in a fractured family, has limited education, and has little or no family support. We cannot say reasonable efforts were not made. It is conceded the reasonable efforts made were not successful.

Kathy next contends she is so bonded to Hakeem that terminating the parental relationship will be harmful to him. We recognize there are cases where children should not have their parental rights terminated, even when grounds for termination exist. In this case, however, we defer to the decision of the trial judge who is closer and more able to observe the parties and the actual family dynamics.

The real question is where the needs of Hakeem will be best served. We have in recent years used termination of parental rights to correct the difficulties of children born to parents who do not meet certain standards for raising them. We proceed down this path with little history and direction. Parental rights are frequently terminated with no promise of a stable home. Additionally, especially where as here the child knows and loves his mother, without a

given understanding of the difficulties caused by severing biological ties and cutting a child from a mother he knows well, we must make decisions on termination.

Hakeem has an attention deficit disorder and nocturnal enuresis. He is being given Ritalin and Imipramine. We can hope but not guarantee he will find a satisfactory adoptive home.

Kathy, despite her faults and immaturity, loves her son. There is no evidence anyone else loves him. Love is not measurable, although to be loved is one of the greatest human needs. Giving credence to the juvenile court's findings, we affirm.

**AFFIRMED.**