**IN THE COURT OF APPEALS OF IOWA**

No. 14-1171
Filed November 26, 2014

**IN THE INTEREST OF J.K., H.K.,**
**C.K., X.K., and D.K.,**
      **Minor Children,**

**R.K., Mother,**
      Appellant,

**D.K., Father,**
      Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D.

Fagan, District Associate Judge.


A mother and father appeal from an order terminating their parental rights

to five children. **AFFIRMED ON BOTH APPEALS.**


Mandy L. Whiddon, Council Bluffs, for appellant-mother.

Maura Goaley, Council Bluffs, for appellant-father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Matthew Wilber, County Attorney, and Eric Stovers, Assistant

County Attorney, for appellee.

Roberta Megel, State Public Defender, and Vanessa E. Strazdas, Council

Bluffs, attorney and guardian ad litem for minor children.


Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, P.J.**

A mother and father appeal from a district court order terminating their parental rights.  They challenge the waiver of reasonable efforts, the statutory grounds for termination, and the best interest determination.  We affirm as to both appeals.

## I.    BACKGROUND FACTS & PROCEEDINGS.

There are five children in the family: J.K. (born 2005), D.K. (born 2007), X.K. (born 2008), C.K. (born 2009), and H.K. (born 2010).  J.K. was removed from the home on August 15, 2013, due to concerns the parents were physically and emotionally abusing him.  This was not the first time the parents were accused of abusing J.K. and the other children.  There had been nine previous abuse reports, starting in 2009.

After the Iowa Department of Human Services (DHS) became involved with J.K., the mother and father were both charged with domestic abuse assault in November 2013.  The other four children were removed on November 18, 2013, due to the concerns of domestic violence, the unsanitary condition of the home, and the parents' inability to supervise the children.  The four younger children were placed with a paternal uncle and his family, where they have remained throughout this case.  J.K.'s severe behavioral problems required his placement at Four Oaks Psychiatric Medical Institute for Children.

Following interviews with child therapists, the four younger children disclosed they were sexually and physically abused by the mother and the father.  Those disclosures resulted in founded child abuse assessments for physical and

sexual abuse and a criminal investigation against the parents. The court ordered the parents to participate in a number of services including individual counseling, domestic violence education, and anger-management classes. The court also ordered the parents to undergo random drug screens, parenting assessments, and psychological evaluations; to follow through with all subsequent recommendations; and to participate in family safety, risk, and permanency services, and supervised visitation.

On October 21, 2013, the court adjudicated all five children in need of assistance (CINA). It found J.K. was a CINA under Iowa Code sections 232.2(6)(b), (c)(1), and (c)(2) (2013). It found the other four children were CINA under sections 232.2(6)(b), (c)(2), and (n). In April 2014, the juvenile court, finding the parents had made very little progress toward the reunification goals, waived the reasonable efforts requirement and changed the permanency goal of the case from reunification to termination of parental rights. The court found the parents had not completed any of the court's orders, except that the mother and father each obtained psychological evaluations. On July 7, 2014 the court ordered termination of the mother's and the father's parental rights under Iowa Code section 232.116(1), paragraphs (d), (e), (h), (i), and (*l*).

At the time of the termination hearing, the mother had been evicted from the family home and was living in a two-bedroom house with her mother. Following removal of the four younger children, the mother had never been able to keep the home in a sanitary state. The father's address was unknown, but

DHS thought he was living with a friend. Neither parent had employment or transportation, other than taxi and bus services DHS provided.

Both parents have anger issues: the mother had repeatedly made death threats against the DHS workers, the foster parents, and the father, and reported that the father had threatened to kill her and the children. There were no ongoing domestic violence issues because the parents were no longer in a relationship, but the mother had not completed anger management or domestic violence classes. The father completed a "Boiling Point" class, but only after the waiver of reasonable efforts. Although ordered to undergo individual therapy, the father had attended one session, and the mother attended none.

In March 2014, the mother was briefly involuntarily committed on mental health and substance abuse issues. Although both parents completed psychological evaluations, they did nothing to follow through with recommendations. The mother has a long history of substance abuse, admitting she began binging on methamphetamine in December 2013 after the children were removed from her care. The father has a history of marijuana use. Neither parent had obtained any substance abuse evaluation or treatment. Of nine drug tests the father scheduled, he tested negative on four and missed five. The mother missed all twenty-two of her scheduled drug tests.

The mother was offered forty-one supervised visitations and attended twelve. The father was offered twenty-eight visitations and attended nine. DHS workers noted the poor quality of the visitations; the parents interacted little with the children, screamed and swore at them, and spoke about inappropriate topics

in front of them. The children have reported at various times they do not want to see their parents or speak to them on the phone.

The court-appointed special advocate (CASA), and the children's various therapists and physicians have reported to the court on their conditions. All the children appear to be significantly traumatized by the time they have spent in the parents' care, particularly J.K. J.K.'s physician and therapist have reported that the parents have emotionally abused J.K. to the extent that his ability to function is impaired. He displays aggressive and sexually inappropriate behaviors and language. He has made homicidal and suicidal threats. The CASA reports that J.K.'s behavior is improving. He enjoys all the activities at Four Oaks and is happy there. The four younger children work with therapists to address the sexual, physical, and verbal abuse they have suffered. As a result of the abuse, they also display inappropriate behaviors that include sexualized behavior and aggressive violence toward others. The two youngest children require speech therapy because their language development is delayed. All four of the younger children report that they feel safe within their uncle's home. The uncle and his family are providing a structured and stable home and making sure the children receive needed therapy and medical attention. Their behaviors have improved since being in the uncle's care.

The parents appeal from the order terminating their parental rights. They contend the juvenile court erred in granting the State's request to waive the

requirement that it make reasonable efforts to reunite the family.[1]  They also contend there was insufficient evidence to support termination on the statutory grounds, and it was not in the children's best interest to terminate their parental rights.

## II.    STANDARD OF REVIEW.

We review termination of parental rights proceedings de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them.  *Id.*  Our primary consideration is the best interest of the child.  *Id.* at 776.

## III.    ANALYSIS.

### A.    Waiver of Reasonable Efforts.

The State is required to make reasonable efforts to have children returned to their homes.  *See* Iowa Code § 232.102(7).  The goal of a child in need of assistance proceeding is to improve parenting skills and maintain the parent-child relationship.  *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997).  However, reasonable efforts can be waived in limited specified circumstances set forth in Iowa Code section 232.102(12).  The State moved the court to waive the reasonable efforts requirement for each of the five children pursuant to Iowa Code section 232.102(12)(b).  This section provides:

> If the court determines by clear and convincing evidence that aggravated circumstances exist, with written findings of fact based

---

[1] The parents' briefs primarily argue that the State and DHS failed to make reasonable efforts in this case.  We read this argument as challenging the court's order waiving reasonable efforts.

upon evidence in the record, the court may waive the requirement for making reasonable efforts. The existence of aggravated circumstances is indicated by any of the following:
. . . .
b. The court finds the circumstances described in section 232.116, subsection 1, paragraph "i", are applicable to the child.

Iowa Code section 232.116(1)(i) applies when:

i. The court finds all that all of the following have occurred:
(1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.
(2) There is clear and convincing evidence that the abuse or neglect posed a significant risk to the life of the child or constituted imminent danger to the child.
(3) There is clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time.

The juvenile court found all five children to be CINA under Iowa Code section 232.2(6)(b), which provides a child in need of assistance is one "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." There were two founded child abuse reports against both parents for physical abuse and sexual abuse. The evidence was also clear and convincing at the time of the waiver hearing that the parents' abuse and neglect had caused significant trauma to the children. The parents were not at that time in any position to resume care of the children. Resumption of care would expose the children to imminent danger as a result of the parents' physical and sexual abuse, substance abuse, mental health issues, domestic violence, and anger issues. Finally, the evidence was clear and convincing that services

would not correct these conditions within a reasonable time. The parents had made little to no progress on the reunification goals, and they would need to do significant additional work to correct the conditions that led to the abuse and neglect.

The mother complains she was not given enough time to make progress and her efforts were hampered by her back problems, her depression, her lack of transportation, and the distress it caused her for the children to be placed in foster care. The father complains DHS was non-communicative, failed to verify his participation in services, and did not give him the help he requested. The juvenile court removed J.K. in August 2013 and the other children in November and waived reasonable efforts in April 2014. It had been about four months, and the parents were making next to no progress toward the reunification goals. Their arguments before us are unpersuasive excuses for their failure to utilize any of the services and forms of assistance the State provided throughout their case. Nor was this CINA case the first the family was involved in. DHS has been receiving reports of abuse in this family since 2009. On our review of the record, the juvenile court was correct to waive reasonable efforts in this case.

### B. Statutory Grounds.

We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.* When the juvenile court orders termination of

parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). Here, we focus on the evidence related to the court's termination of the mother's parental rights under Iowa Code section 232.116(1)(i). For the reasons discussed above, we find there is clear and convincing evidence to support termination of the parent's rights under Iowa Code section 232.116(1)(i). We affirm the juvenile court.

### C.    Best Interest.

The father contends it was not in the children's best interests to terminate his parental rights.[2] Under Iowa Code section 232.116(2), in considering whether to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." "Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *A.B.*, 815 N.W.2d at 778 (internal quotations and citations omitted).

The father's history of abusing the children, lack of progress toward the reunification goals, and lackluster attendance at visitations persuade us that the best interests of all five children requires that we terminate the father's parental rights. Their best chance of overcoming the trauma that he and the mother have inflicted on them is in termination of their rights and continued placement with the

---

[2] The mother does not join in this contention.

uncle for the four younger children and with Four Oaks for J.K.  Their current placements are the most likely to further their long-term nurturing and growth, and meet their physical, mental, and emotional needs.  The evidence is clear and convincing that termination is in their best interests.

**IV.    CONCLUSION.**

On our de novo review, we conclude the juvenile court was correct to waive reasonable efforts in this case.  We further find the evidence supported termination of parental rights under Iowa Code section 232.116(1)(i), and it was in the children's best interests to terminate parental rights.  Accordingly, we affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**