# IN THE COURT OF APPEALS OF IOWA

No. 19-0162
Filed July 24, 2019

**IN THE INTEREST OF T.P.,**
**Minor Child,**

**A.P., Mother,**
      Appellant.
_____

      Appeal from the Iowa District Court for Page County, Amy L. Zacharias,

Judge.


      The mother appeals the termination of her parental rights to her child.

**AFFIRMED.**


      Ryan M. Dale, Council Bluffs, for appellant mother.

      Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

      Vicki R. Danley, Sidney, attorney and guardian ad litem for minor child.


      Considered by Potterfield, P.J., and Doyle and May, JJ.

**MAY, Judge.**

The juvenile court terminated the mother's parental rights to her child, T.P. On appeal, the mother argues (1) the State failed to prove by clear and convincing evidence that grounds for termination exist under Iowa Code section 232.116(1)(f) (2018) and failed to make reasonable efforts toward reunification; (2) termination is not in the child's best interest; (3) the mother's strong bond with T.P. precludes termination; and (4) the mother should have been afforded additional time to seek out a new therapist for T.P. We affirm the juvenile court.

## I. Background Facts and Proceedings

T.P. was born in 2009. The Iowa Department of Human Services (DHS) first became involved with T.P. in June 2017 when DHS received allegations that the mother was using methamphetamine—and even used methamphetamine with her daughter, T.P.'s older sister.[1] DHS also received allegations that Dominic, the mother's paramour, sexually abused the sister; that the sister told the mother about the abuse; and that, despite knowing of the abuse, the mother allowed Dominic to move back into the home. Ultimately, DHS found Dominic was responsible for committing the sexual abuse.[2] In addition, DHS found the mother was responsible for denying critical care and failing to provide supervision.

DHS removed T.P. and the sister from the mother's custody and placed them in the care of their father, where T.P. remains. On October 5, T.P. and the

---

[1] T.P.'s sister was initially involved in this case. However, her case closed in September 2018 when she turned eighteen years old.
[2] In June 2018, Dominic pled guilty to third-degree sexual abuse.

sister were adjudicated as children in need of assistance (CINA) and formally removed from the mother's custody.

In January 2018, the sister reported that Travis, another of the mother's paramours, had sexually abused her when she was fifteen years old. She reported that this abuse had occurred in the family home prior to the children's removal. After investigation, DHS found Travis was responsible for committing the sexual abuse.

The sister also reported that, prior to removal, the mother had let the sister and T.P. "accompany her when she went to an unknown person's home to purchase marijuana and methamphetamines." DHS found the mother was responsible for this exposure.

On August 22, the State filed a petition to terminate the mother's parental rights. A termination hearing was held on October 18 and 30. On January 14, 2019, the juvenile court issued an order terminating the mother's parental rights. The juvenile court observed:

> This [c]ourt does not often find it necessary to terminate one parent's rights while leaving the child in the custody of the other parent. It is in extreme cases of neglect, abuse, and mistreatment that the [c]ourt finds there is no other choice to protect the child than to sever the parent/child relationship. This is one of those cases. A review of the record in this case is heartbreaking and devastating. [The mother] allowed her children to be in the worst of situations and when given the chance for many months to engage in services, she did not. [The mother] has made some personal progress with treatment but [T.P.] is simply unable to move past what has occurred.

The mother appealed. Our supreme court transferred the case to this court.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented." *In re C.S.*, No. 13-1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

"We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *C.B.*, 611 N.W.2d at 492.

## III. Analysis

We use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must determine whether a ground for termination under section 232.116(1) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Finally, we must consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). We also consider any additional arguments raised by the appellant, such as whether the State proved DHS made reasonable efforts toward reunification

and whether the juvenile court should have granted additional time before terminating.

### A. Grounds for Termination

Our first step is to determine if a ground of termination under section 232.116(1) has been established. *Id.* at 472–73. "The State has the burden of proving the grounds for termination by clear and convincing evidence." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997).

The juvenile court found the State met its burden of proving grounds for termination under Iowa Code section 232.116(1)(f). In her petition on appeal, the mother contests this finding by stating: "This issue arose from the County Attorney filing for termination of parental rights on this ground, but not providing clear and convincing evidence in support thereof." This is not sufficient to present the issue for our review. *See State v. Mann*, 602 N.W.2d 785, 788 n.1 (Iowa 1999) (noting the mere mention of an issue without analysis, argument, or supporting authority is insufficient to prompt appellate consideration).[3]

Nevertheless, based on our de novo review, we find the State met its burden of proof. Under section 232.116(1)(f), the court may terminate a parent's parental rights if it finds all of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

---

[3] The mother attached a juvenile court filing entitled "Mother's Closing Argument" to her petition on appeal. Our rules do not permit this approach. *See* Iowa R. App. P. 6.201(e)(2). The only permissible attachments are (1) "[t]he petition for termination of parental rights and any amendments to the petition," (2) "[t]he order or judgment terminating parental rights or dismissing the termination petition," and (3) "[a]ny ruling on a motion for new trial . . . or a motion under Iowa R. Civ. P. 1.904(2)." *Id.* Nevertheless, we have considered the arguments contained within the attachment. Even in light of those arguments, we conclude termination was appropriate.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Here, the record demonstrates (1) T.P. is older than four years, (2) T.P. was adjudicated as a CINA, and (3) T.P. has not been in the mother's care since formal removal on October 5, 2017.  *See* Iowa Code § 232.116(1)(f)(1)–(3).  The only remaining question, then, is whether T.P. could have been safely returned to the mother at the time of the termination hearing.  *Id.* § 232.116(1)(f)(4).

At the termination hearing, a DHS supervisor opined T.P. could not be returned to the mother's care at the present time.  She testified as follows: "He is frightened of his mom.  He does not trust her to keep him safe.  If you even try to gently explore the topic, the anxiety that he displays is—it's overwhelming."  We consider this testimony clear and convincing evidence that T.P. could not have been returned to the mother at the time of the termination hearing.  *See id.*

We recognize, however, "[t]he State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent." *C.B.*, 611 N.W.2d at 493.  Here, the mother asserts DHS failed to make reasonable efforts by not providing visitation with T.P. despite her requests.  She argues that, although she has made progress, she has been denied even supervised therapeutic visitation.

"To establish reasonable efforts, the DHS must either present a definitive plan with the ultimate goal of visitation or make a showing that visitation is not in the children's best interests."  *In re S.P.*, No. 16-1919, 2017 WL 108798, at *5

(Iowa Ct. App. Jan. 11, 2017). "When assessing reasonable efforts, the safety and health of the child[] 'shall be the paramount concern.'" *In re K.W.*, No. 2-560, 2002 WL 1842962, at *1 (Iowa Ct. App. Aug. 14, 2002) (quoting Iowa Code § 232.102(1)(a) (2001)); *see* Iowa Code § 232.102(12)(a) (2018).

In its August 2018 permanency order, the juvenile court found that, although the mother had made some progress, "the children ha[d] not make the same amount of progress towards resuming visitation with [the mother] given the PTSD they continue to experience." In its termination order, the juvenile court also stated: "The [c]ourt is unable and unwilling to force a child to attend visits with a parent and cause the child more trauma—ultimately, the [c]ourt must do what is the child's best interests and rely upon the therapist who has had consistent contact with the child."

Upon our de novo review, we agree with the juvenile court that visitation was not in T.P.'s best interest. We conclude the reasonable-efforts requirement was satisfied. We further conclude T.P. could not have been safely returned to the mother at the time of the termination hearing. The State met its burden of proving grounds for termination under Iowa Code section 232.116(1)(f). The first step of our analysis is complete.

**B. Best-Interests Framework**

Our next step is to consider the best-interest framework set forth in section 232.116(2). *A.S.*, 906 N.W.2d at 473. Section 232.116(2) provides in relevant part:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term

nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

*See* Iowa Code § 232.116(2)(a), (b), (c) (identifying factors that may be relevant to the court's best-interest analysis).

The mother asserts "[t]he evidence shows that [T.P.]'s anxiety and 'clinginess' had gotten worse since not seeing [the mother]." Therefore, she argues T.P.'s best interests are served through reunification.

We disagree. Our first concern is T.P.'s safety. It is undisputed the sister suffered sexual abuse in the family home while in the mother's care. While the mother has denied knowledge of the abuse, we defer to the juvenile court's credibility finding that the mother's denial was "completely unbelievable." We conclude T.P. would be at risk of sexual abuse if he were to return to his mother's care. *See In re D.D.*, 653 N.W.2d 359, 362 (Iowa 2002) (noting that "ordinarily, all siblings are at risk when one child has been sexually abused").

Likewise, the mother's drug abuse has placed T.P. in danger. As noted, DHS issued a founded report that the mother took T.P. and his sister to a drug transaction. Although mother denied the incident, we defer to the juvenile court's finding that her denial was "completely self-serving."

We further note that T.P. wrote a letter to the juvenile court stating he did not want to return to his mother's care. While a child's opinions do not control our best-interest analysis, we do take them into consideration. *See In re N.S.*, No. 19-0533, 2019 WL 2375252, at *2 (Iowa Ct. App. June 5, 2019) (noting the child expressed a "strong desire" to not return to her father's care and finding "the emotional well-being of the child militated against reunification"); *but see In re L.P.*,

370 N.W.2d 839, 843 (Iowa Ct. App. 1985) ("The best interests of the child are the central determination in termination proceedings . . . and we know of no authority for the proposition that a child's wishes take precedence over his or her best interests in these matters.").

This case, though, is not just about a child's preferences. The record shows that T.P. is actually "frightened of his mom" and "does not trust her to keep him safe."

Finally, the record suggests T.P. is doing well in his father's care. According to a DHS report to the court, T.P. "is extremely attached to his father" and he "feel[s] very safe" in the father's care.

Based on our de novo review, we find termination is in T.P.'s best interest. *See C.B.*, 611 N.W.2d at 495 ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)).

**C. Exceptions**

Next, we consider permissive exceptions under Iowa Code section 232.116(3), which provides as follows:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> (a) A relative has legal custody of the child.
> (b) The child is over ten years of age and objects to the termination.
> (c) There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
> (d) It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-

child relationship is not preventing a permanent family placement for the child.

(e) The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

"[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. If the parent proves an exception, this court *may* conclude termination is inappropriate. *Id.* We are not, however, *required* to reach that conclusion. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

The mother asserts her strong bond with T.P. precludes termination. As noted, however, T.P. wrote a letter to the juvenile court stating he did not want to return to his mother's care. He also stated he did not have "any fun memor[ies] of her." We do not find "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

**D. Additional Time**

Finally, the mother argues she should have been afforded additional time to seek out a new therapist for T.P. and begin therapeutic visitation with him. Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

In its termination order, the juvenile court explained:

The mother's attorney filed a motion to continue asking that she be allowed more time to seek a second opinion regarding the mental health of the child and his ability to engage in visits with her. Throughout this case, [T.P.'s] therapist has continued to find that it would be detrimental to the child's mental health to engage in visits

with his mother.  Regular reports were filed in the underlying CINA proceedings and were submitted at the termination hearing.  The motion to continue was filed at the eleventh hour on October 16, 2018.  Despite this case being open for more than a year, the child's mother has never asked for these services and only seeks them now in an effort to delay this trial.  This [c]ourt finds it is in the child's best interests to deny the motion to continue and proceed with trial.

We agree with the juvenile court's assessment.  Moreover, on our de novo review, we do not find an additional six months would extinguish the need for removal.  *See* Iowa Code § 232.104(2)(b).

## IV. Conclusion

For the reasons stated, we conclude the juvenile court properly terminated the mother's parental rights.

**AFFIRMED.**