# IN THE COURT OF APPEALS OF IOWA

No. 19-1647
Filed January 9, 2020

**IN THE INTEREST OF J.F.,**
**Minor Child,**

**C.F., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mark C. Cord III, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

T. Cody Farrens, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant Attorney General, for appellee State.

Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Greer, JJ.

**MAY, Judge.**

A mother appeals the termination of her parental rights to her child, J.F., who was born in February 2018. On appeal, the mother claims the statutory grounds authorizing termination were not satisfied and the State failed to make reasonable efforts towards reunification. We affirm.

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented." *In re C.S.*, No. 13-1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). But when, as here, the parent's claims only relate to one step in our analysis, we only address that step. Here, the mother's claims relate solely to the first step—determination of whether a ground for termination under section 232.116(1) has been established. *Id.* at 472–73.

"The State has the burden of proving the grounds for termination by clear and convincing evidence." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, the juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(d) and (h) (2019). We choose to focus on section 232.116(1)(h).

The mother only challenges the fourth element of section 232.116(1)(h), whether J.F. could be returned to her at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean at the time of the termination hearing). The juvenile court concluded J.F. could not be safely returned. This conclusion finds strong support in the record.

Throughout the life of this case, the mother has lacked stable housing. *See In re D.H.*, No. 18-1552, 2019 WL 156668, at *1 (Iowa Ct. App. Jan. 9, 2019) (finding parent's unstable housing militated in favor of termination and collecting cases). She jumped from location to location and town to town. At the termination hearing, she testified she had secured an apartment—but had only been living there about a month. And she had not paid her complete deposit yet. Given her long history of moving place to place after short periods of time, we cannot say this newly-acquired apartment constitutes stable housing.

Moreover, the mother struggles both in understanding J.F.'s needs and in accepting guidance intended to educate her about J.F.'s needs. For example, at the termination hearing, she requested J.F. be placed with a friend instead of J.F.'s father. She preferred this placement because she believed her friend would be "more than happy to allow [her] to see [J.F.]" But J.F. hadn't seen this friend in several months. And J.F. was doing well in the father's home.

The record reveals many other examples. During a visit, the mother was directed to put her phone down; in response, the mother became upset and threw the phone against a wall in J.F.'s presence. During a visit at a bookstore, the mother put J.F. down and browsed the books while young J.F. wandered in and

out of her eye line. And the mother provided J.F. with foods like tacos when they were inappropriate for her age. *See In re N.M.-R.*, No. 19-1209, 2019 WL 5063340, at *2 (Iowa Ct. App. Oct. 9, 2019).

The mother also does not interact in an appropriate manner with other adults in J.H.'s life. There is a no-contact order prohibiting the mother from contacting the father. Yet she has repeatedly violated this court order. She snuck onto the father's property; she left notes on vehicle windshields and removed vehicle registration tags from vehicles on the property. She also sent aggressive text messages to J.H.'s stepmother telling her to jump off a bridge. She often ignored text messages from the Iowa Department of Human Services (DHS) social worker or instigated arguments with the worker when the worker attempted to communicate with her about J.H. It is essential that parents be able to interact with others involved in their child's life. *See, e.g.*, *In re M.P.*, No. 19-0995, 2019 WL 5063337, at *4 (Iowa Ct. App. Oct. 9, 2019) (noting the parent's acrimonious interaction with other adults negatively impacted his children); *In re K.S.*, No. 18-1759, 2018 WL 6705523, at *2 (Iowa Ct. App. Dec. 19, 2018) (finding a parent's inability to regulate her emotions and interact with other appropriately impeded her ability to care for her children); *In re O.N.*, No. 17-0918, 2017 WL 3525324, at *3 (Iowa Ct. App. Aug. 16, 2017) (finding a parent's inability to regulate her emotions and interact appropriately with DHS staff negatively impacted her children). The record demonstrates the mother is unable to perform this essential function.

Still, we acknowledge the mother has made some progress. She engaged in mental-health services, found employment, and completed two parenting classes. But she described her employment as seasonal, leaving us to wonder if

it will continue. And her conduct suggests she has not internalized the material from the parenting classes. She offered J.H.'s stepmother assistance with supplies for J.H. But the mother admits she changes J.H.'s clothing at the beginning of visits and then changes J.H. back into her original clothes at the end of the visits. She contends this is because she likes to see J.H. in her clothing and could not do so if she sent the clothing home with J.H. But it suggests her offer of supplies for J.H. was not serious. Moreover, much of the mother's progress occurred late in the case and cannot be relied upon to conclude the need for removal obviated at the time of the termination hearing. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) (noting parent's delayed efforts were insufficient); *In re A.E.*, No. 16-0510, 2016 WL 3271887, at *3 (Iowa Ct. App. June, 15, 2016) (collecting cases noting last-minute efforts are not reliable).

These and other facts support the juvenile court's conclusion that J.H. could not be safely returned to the mother's care. We recognize, however, "[t]he State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent." *C.B.*, 611 N.W.2d at 493. "When assessing reasonable efforts, the safety and health of the child 'shall be the paramount concern.'" *In re K.W.*, No. 2-560, 2002 WL 1842962, at *1 (Iowa Ct. App. Aug. 14, 2002) (quoting Iowa Code § 232.102(10)(a) (2001)); *accord* Iowa Code § 232.102(12)(a) (2019).

The mother claims the State failed to make reasonable efforts. She complains DHS delayed its compliance with a court directive to assist her and the father in completing mediation. And she claims the State's filing of a petition to

terminate her rights compromised her bargaining power when the two parents eventually attempted mediation.

These complaints miss the point. The "focus" of the reasonable-efforts requirement is "services to improve parenting." *See C.B.*, 611 N.W.2d at 493. We do not see how immediate mediation, or a stronger bargaining position entering that mediation, would have improved the mother's parenting and eliminated the need for removal. So we find no merit in the mother's challenges to the State's efforts.

In short, the State has clearly met its burden of proving grounds for termination under Iowa Code section 232.116(1)(h). The juvenile court was correct in terminating the mother's parental rights.

**AFFIRMED.**