# IN THE COURT OF APPEALS OF IOWA

No. 18-0837
Filed July 5, 2018

**IN THE INTEREST OF O.T.,**
**Minor Child,**

**A.F., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.

Mother appeals from an order terminating her parental rights pursuant to Iowa Code chapter 232 (2017). **AFFIRMED.**

Wayne E. Nelson of Office of the State Public Defender, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Robin L. O'Brien Licht, Cedar Rapids, guardian ad litem for minor child.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Angel appeals from an order terminating her parental rights in her child O.T. (born 2016) pursuant to Iowa Code section 232.116(1)(h) (2017). O.T.'s biological father does not appeal from the termination of his parental rights. On appeal, Angel contends the Iowa Department of Human Services (IDHS) failed to make reasonable efforts towards reunification and argues termination is not in the best interest of her child.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established and need not be repeated herein. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (setting forth the statutory framework).

This family came to the attention of IDHS in January 2017 when then three-month-old O.T. was hospitalized twice due to concerns regarding her significant weight loss while in Angel's care. The child has special medical needs, but there was no medical explanation for her failure to thrive. IDHS offered the family extensive voluntary services. Despite the provision of services, Angel failed to follow the medically-recommended feeding plan, missed a number of the child's medical appointments, remained unemployed, and lacked stable housing. O.T. was removed from the parents' care in May 2017.

Angel has been largely non-compliant with services throughout the life of this case. She has a long history of mental-health concerns, but she refused to obtain a mental-health evaluation until September 2017. She was diagnosed with anxiety disorder, PTSD, ADHD, and insomnia. Her previous diagnoses included

OCD and depressive disorder. The mental-health evaluation recommended individual therapy, but Angel failed to attend. She failed to consistently take her medications until shortly before the termination hearing. Angel has a significant history of drug and alcohol abuse; she began smoking marijuana at age twelve. Since that time, Angel has completed substance-abuse treatment on multiple occasions but always relapsed. During the pendency of this case, she missed a significant number of drug screens despite repeated reminders. She was not able to obtain stable housing and was frequently homeless, bouncing between friends and family members. While she did find some employment during the case, she never held any position for any material length of time. She refused parenting classes and required two referrals for a parenting partner, who she met on only one occasion. Her attendance at O.T.'s medical appointments was sporadic. She was inconsistent with visitation, missing all her visits in November 2017, one in December 2017, five in January 2018, and two in February 2018. At the time of the termination hearing on March 2, 2018, Angel had shown about three weeks of improvement. She was "looking into therapy," attempting to save for an apartment, starting a new job, working with providers, and visiting her child. However, her caseworkers were skeptical given her "history of not following-through" and believed the changes she made were in preparation for the hearing and not "real changes." Ultimately, the juvenile court terminated Angel's parental rights in O.T. in April 2018.

We first address Angel's reasonable efforts argument. As part of its burden of proving the child could not be returned to Angel's care at the time of the termination hearing, the State must prove it made reasonable efforts to return the

4

child to the care of the parent. *See* Iowa Code § 232.102(9) (providing the department of human services must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). Reasonable efforts "facilitate reunification while protecting the child from the harm responsible for the removal." *In re J.W.*, No. 17-1937, 2018 WL 1099179, at *2 (Iowa Ct. App. Feb. 21, 2018) (quoting *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996)). "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) (citing *In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997)).

Angel argues IDHS did not make reasonable efforts to facilitate reunification because she was not given a follow-up mental-health evaluation after she and some providers believed the first one was incomplete and because "she was left to her own devices to identify and obtain appropriate therapy services." This claim is waived. Although Angel made one motion for additional services, the motion related to visitation issues. Angel never raised in the juvenile court any complaint regarding the mental-health services offered. The failure to request different or additional mental-health services in the juvenile court precludes her challenge to the services on appeal. *See id.* ("If . . . a parent is not satisfied with [I]DHS' response to a request for other services, the parent must come to court and present this challenge."); *In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000) ("We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the termination hearing or the issue is

considered waived for appeal); *see also* Iowa Code § 232.99(3) ("The court shall advise the parties that failure to identify a deficiency in services or to request additional services may preclude the party from challenging the sufficiency of the services in a termination of parent-child relationship proceeding.").

Even if Angel had not waived her challenge, her claim would fail. Angel received a court-ordered mental-health evaluation. Although the evaluation was not entirely consistent with previous diagnoses, there is no reason Angel could not have commenced therapy while awaiting an additional evaluation. IDHS frequently reminded Angel to schedule therapy appointments and provided her with several possible locations for treatment. Testimony at trial established that funding was not available for a second evaluation. But Angel's caseworker assisted Angel in determining how her insurance would cover the additional evaluation and offered transportation assistance. We also note that Angel was given a wealth of additional services. She was offered family safety, risk and permanency services; financial planning assistance; lactation consultants; in-home nursing; parenting partners; cab services; supervised visitation; in-home drop-in services; family team meetings; family foster care; individual counseling; a mental-health evaluation; drug testing; transportation assistance; protective daycare; a family support worker; and parenting classes. This is not a case in which the mother was not provided with adequate services to facilitate reunification, this is a case in which the mother chose to not avail herself of the services offered. Angel admitted this during trial, stating, "Like I said, for the majority of this case I wasn't stable and [the father] and I were not doing the things that were expected of us. We weren't really taking it seriously."

Next, Angel argues termination is not in O.T.'s best interest pursuant to Iowa Code subsections 232.116(2) and (3). Because these provisions are not interchangeable, we analyze them separately in order. In determining the best interest of the children pursuant to section 232.116(2), we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The "legislature has established a limited time frame" of six months "for parents to demonstrate their ability to be parents." *See In re A.S.*, 906 N.W.2d at 474 (quoting *In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006)).

Here, termination of Angel's parental rights is in the best interest of her child. Angel refused to address her mental-health needs during the life of the case. She refused drug screening. Her visitation was inconsistent. She had persistent issues with instability, unemployment, and housing. She was not overly engaged in meeting O.T.'s medical needs. Although Angel has recently shown some motivation to change, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d at 41). As the juvenile court found, Angel is not "equipped mentally, emotionally, and physically to provide for [O.T.]'s needs." We agree. O.T. deserves stability and permanency.

Finally, we address Angel's argument that the strong parent-child bond precludes termination pursuant to Iowa Code section 232.116(3)(c). "A finding of any of [the section 232.116(3)] factors allows the court to avoid terminating parental rights, but the factors 'are permissive, not mandatory.'" *In re A.S.*, 906 N.W.2d at 475 (quoting *In re A.M.*, 843 N.W.2d at 113). "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination." *Id.* at 476. Angel did not meet her burden. Although there was some testimony about Angel's bond with O.T., Angel herself also testified that the current arrangement had not been sufficient to develop her bond with O.T. At the time of termination, Angel had only about one consecutive month of consistent visitation. Angel's caseworker testified that any emotional damage to O.T. stemming from termination "would be very minimal" and that the child needed stability in a permanent home. O.T. has resided out of the home for over half of her young life. *See In re A.H.*, No. 17-1717, 2017 WL 6513633, at *2 (Iowa Ct. App. Dec. 20, 2017) (rejecting strength of bond argument where "[b]oth children have been removed from their parents for nearly half of their young lives"); *In re E.C.*, No. 12-0526, 2012 WL 2408005, at *3 (Iowa Ct. App. June 27, 2012) (same). She deserves the love, security, and stability an adoptive placement can provide. There is no basis to conclude that Angel's bond with O.T. should preclude termination of her parental rights.

In light of the above, we affirm the juvenile court's order terminating Angel's parental rights in O.T.

**AFFIRMED.**