**IN THE COURT OF APPEALS OF IOWA**

No. 19-0503
Filed July 3, 2019

**IN THE INTEREST OF K.M.,**
**Minor Child,**

**R.R., Mother,**
        Appellant,

**S.M., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Cedar County, Gary P. Strausser, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Sara Strain Linder of Bray & Klockau, Iowa City, for appellant mother.

Lisa Renee Jones of Norton, Baumann & Surls, PLLC, Lowden, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Don W. Schroeder of Schroeder Law Firm PLC, West Liberty, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**MAY, Judge.**

The juvenile court terminated a mother and father's parental rights to their child, K.M. On appeal, both parents contend the juvenile court erred (1) in concluding the statutory requirements for termination were satisfied. Additionally, the mother contends the juvenile court erred (2) in declining to provide her with an additional six months to work toward reunification, (3) in finding termination is in K.M.'s best interest, and (4) in terminating despite a strong parent-child bond and K.M.'s placement with a relative. We affirm the juvenile court.

## I. Background Facts and Proceedings

K.M. was born in 2017. Prior to K.M.'s birth, the parents' drug use led the Iowa Department of Human Services (DHS) to become involved with respect to their older children.[1] The mother continued to use methamphetamine while pregnant with K.M. The mother gave birth to K.M. three weeks early; as a result, K.M. had to stay in the neonatal intensive care unit for one week. K.M.'s umbilical cord blood tested positive for amphetamines and methamphetamine. The mother also tested positive for amphetamines.

The juvenile court issued an emergency order removing K.M. from both parents' care. The court then adjudicated K.M. as a child in need of assistance and placed K.M. in the custody of a maternal aunt.

DHS experienced difficulty in providing services to the parents. The parents' phones were shut off at one point, preventing communication with DHS. And the parents failed to meet with the social worker tasked with compiling their

---

[1] K.M.'s mother has a child with another man. K.M.'s father has three other children.

social history.  Likewise, both parents often arrived late or failed to attend visitation, though the mother attended more often than the father.  During visitation, the mother sometimes exhibited signs of stimulant crash, such as sleeping so soundly that the care coordinator had to wake her up.

Animosity also began to grow between the mother and her sister, K.M.'s placement.  The mother believed her sister intended to "steal[]" K.M.  The mother's sister grew suspicious that the mother continued to abuse methamphetamine.  She also felt the mother had become belligerent toward her and did not respect her or her husband.  As a result, the sister ultimately refused to supervise any additional visitation for the parents.

Shortly after K.M.'s birth, the mother sought intensive outpatient substance-abuse treatment, but she failed to attend individual appointments or group therapy.  This prompted the treatment facility to recommend the mother be reevaluated to determine her treatment options.  The mother showed signs of drug use at a January 2018 meeting.  She tested positive for methamphetamine in March 2018.  However, the mother began substance-abuse treatment that same month.  According to a July 2018 letter from her care provider, the mother continued to progress in treatment up to that point in time.

Meanwhile, the father also struggled with substance abuse, testing positive for amphetamines and methamphetamine in December 2017.  And he exhibited signs of drug use at the January 2018 meeting.  In February 2018, the father completed a substance-abuse evaluation, which recommended extended out-patient treatment.  In March 2018, he again tested positive for methamphetamine.

The father entered substance-abuse treatment in April 2018 but did not complete the program.

The juvenile court held a termination hearing in July 2018. The parents arrived late without explanation. The juvenile court ordered both parents to submit to drug testing, which was available in the courthouse. The mother's results were negative, but the father tested positive for methamphetamine and amphetamines.

On March 14, 2019, the juvenile court terminated both the mother and father's parental rights to K.M. pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2018). Both parents appealed. Our supreme court transferred the case to this court.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented." *In re C.S.*, No. 13-1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

## III. Analysis

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must determine whether a ground for termination under section 232.116(1) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473. Finally, we

must consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

### A. Grounds for Termination

Our first step is to determine if a ground of termination under section 232.116(1) has been established. *Id.* at 472–73. "The State has the burden of proving the grounds for termination by clear and convincing evidence." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address grounds for termination under Iowa Code section 232.116(1)(h) with respect to both parents.

Iowa Code section 232.116(1)(h) authorizes termination of a parent's parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Here, each parent challenges the fourth element. Each contends K.M. could have been returned to their care at the time of the termination hearing.

We agree with the juvenile court that K.M. could not be returned to the father's care. The father was largely absent from visitations with K.M. He

continued to abuse methamphetamine. We commend the father for eventually participating in substance-abuse treatment. However, his positive drug test administered the day of the termination hearing demonstrates K.M. could not safely return to his care. *See In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care."); *A.B.*, 815 N.W.2d at 776 (noting "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children"); *In re B.S.*, No.19-0006, 2019 WL 1055686, at *1 (Iowa Ct. App. Mar. 6, 2019) (collecting cases concluding a child cannot be safely returned to parent with unresolved substance-abuse issues).

We also agree with the juvenile court that K.M. could not be returned to the mother's care either. During several visitations, the mother displayed signs of a stimulant crash, indicating she recently used stimulants. On one occasion, she fell asleep while holding K.M. She smacked K.M.'s head on a table when she awoke.

While her drug screen during the termination hearing was negative, she had a positive test a few months prior. We find her explanation that she used another person's urine to produce a false positive for that test to be unbelievable and illogical. The mother also evaded drug testing on several occasions, which suggests she knew testing would produce a positive result. *Cf. In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) (noting missed drug screenings are presumed positive).

The mother also struggled to comply with basic tasks such as confirming visitations by 8:30 a.m. the day of visitation. She explained she had difficulty

waking up in time. It is difficult to imagine she would be able to adequately care for K.M., an infant, when she is unable to wake up in the mornings to complete basic tasks. Even more concerning, two weeks prior to the termination hearing, the mother fell asleep while driving to a visitation with her other child. She only woke up after driving over roadside rumble strips. She pulled over, slept on the side of the road, and missed the scheduled visitation.

Finally, given the father's ongoing substance abuse, the mother's continued relationship with the father also indicates K.M. could not be safely returned to the mother's care. *See In re M.M.*, No. 18-1028, 2018 WL 4361074, at *2 (Iowa Ct. App. Sept. 12, 2018) (noting a parent's ongoing relationship with an active substance abuser weighed in favor of termination).

In short, K.M could not have been returned to either parent's care at the time of the termination hearing. The first step of our analysis is satisfied.[2]

---

[2] Neither parent directly challenges the sufficiency the State's reasonable efforts to support reunification, which "impacts the burden of proving [the statutory] elements of termination, which require reasonable efforts." *See C.B.*, 611 N.W.2d at 493 ("The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent."). However, both parents allude to such a challenge in their petitions on appeal. Any such claims are not sufficiently developed for our review. *See In re E.C.*, No. 14-0754, 2014 WL 3513336, at *2 (Iowa Ct. App. July 16, 2014). Further, any such claim is waived because neither parent brought a request for additional services to the juvenile court prior to the termination hearing. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the termination hearing or the issue is considered waived for appeal).

## B. Best-Interest Framework

Our next step is to consider the best-interest framework set forth in section 232.116(2). *A.S.*, 906 N.W.2d at 473. Section 232.116(2) provides in relevant part:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

*See* Iowa Code § 232.116(2)(a), (b), (c) (identifying factors that may be relevant to the court's best-interest analysis).

Here, the father does not contest the juvenile court's conclusion termination of his parental rights is in K.M.'s best interest. The mother, however, notes K.M. recognizes her and that she has provided for K.M.'s needs. On these grounds, the mother argues that termination is not in K.M.'s best interest.

We disagree. K.M. has not lived with either parent. Neither parent has provided care and support for K.M. for any meaningful period of time. Rather, K.M. is bonded to her aunt's family, who has cared for her since 2017. The aunt and uncle are willing to adopt K.M. *See id.* § 232.116(2)(b). Both are working to maintain a relationship between K.M. and a half-sibling. *Cf. In re A.M.S.*, 419 N.W.2d 723, 734 (Iowa 1988) (noting siblings should be raised together when possible). We conclude the second step of our analysis is satisfied.

## C. Exceptions

Next, we consider section 232.116(3), which provides as follows:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> (a) A relative has legal custody of the child.

(b) The child is over ten years of age and objects to the termination.

(c) There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

(d) It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.

(e) The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

"[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. If the parent proves an exception, this court *may* conclude termination is inappropriate. *Id.* We are not, however, *required* to reach that conclusion. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Rather, we exercise our discretion, "based on the unique circumstances of each case and the best interests of the child," to determine whether the parent-child relationship should be saved. *Id.* (citation omitted).

The father does not contend any exception to termination applies, but the mother does. She contends the juvenile court did not need to terminate because K.M. was in the custody of a relative pursuant to Iowa Code section 232.116(3)(a). The State responds that the mother failed to preserve error because she failed to assert this claim in the juvenile court. We agree with the State. *See A.B.*, 815 N.W.2d at 773 ("[T]he general rule that appellate arguments must first be raised in the trial court applies to . . . termination of parental rights cases."). Moreover, even if error was preserved, we find no compelling reason to apply the exception and

forego termination in this instance. Rather, for reasons already explained, we believe K.M.'s best interest requires termination.

Still, the mother argues the strength of the parent-child bond should preclude termination pursuant to section 232.116(3)(c). We disagree and find the mother overstates her relationship with K.M. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the child]'s developing needs.").

**D. Additional Time**

Finally, we consider the mother's contention the juvenile court erred in declining to provide an additional six months to work toward reunification. The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Here, the mother argues the need for removal will be obviated in the near future as she progresses through substance-abuse treatment and therapy. She also points to her recent improvements in attending visitation and maintaining stable housing. Even so, the mother appears committed to continuing her relationship with the father. His confirmed substance abuse presents a serious risk of harm to K.M. Moreover, the mother's "past performance is indicative of the quality of care [s]he is capable of providing in the future." *In re N.A.S.*, No. 13-0074, 2013 WL 988895, at *2 (Iowa Ct. App. Mar. 13, 2013); *accord In re C.W.*,

554 N.W.2d 279, 283 (Iowa Ct. App. 1996).  Her history reveals deficiencies she is unlikely to resolve in the near future.  The juvenile court reasonably concluded it could not rely on the mother to turn over a new leaf within the next six months.

**IV. Conclusion**

For the reasons stated, we conclude the juvenile court properly terminated both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**