# IN THE COURT OF APPEALS OF IOWA

No. 19-0605
Filed July 24, 2019

**IN THE INTEREST OF A.H.,**
**Minor Child,**

**C.H., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic,

District Associate Judge.


    A mother appeals the termination of her parental rights.  **AFFIRMED.**


    Mark A. Milder, Waverly, for appellant mother.

    Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

    Cynthia Schuknecht of Noah, Smith, Schuknecht & Sloter, P.L.C., Charles

City, attorney and guardian ad litem for minor child.


    Considered by Potterfield, P.J., and Doyle and May, JJ.

**MAY, Judge.**

The juvenile court terminated the mother's parental rights to her child, A.H.[1] On appeal, the mother contends the juvenile court erred (1) in permitting her trial counsel to withdraw following termination and (2) in declining to provide the mother with an additional six months to work toward reunification. We affirm the juvenile court.

**I. Background Facts and Proceedings**

A.H. was born in 2011. The mother is a single parent.

In 2013, the Iowa Department of Human Services (DHS) first became involved with this family due to the presence of illegal drugs around A.H. as well as the mother's failure to provide supervision. The juvenile court adjudicated A.H. as a child in need of assistance from 2013 to 2015.

In March 2017, the mother was convicted of felony forgery. The district court placed her on probation.

The present case arose from concerns that, in December 2017, the mother was under the influence of methamphetamine while caring for A.H. During an interview with DHS in early December 2017, the mother admitted she was addicted to methamphetamine and had sought intensive outpatient treatment three times. Later the same month, the juvenile court again adjudicated A.H. as a child in need of assistance.

---

[1] The father's parental rights were also terminated. He does not appeal.

In January 2018, the mother entered inpatient treatment; in February, she was successfully discharged. However, she relapsed while participating in outpatient therapy.

In March 2018, the mother sought participation in the family-preservation-court program. She was discharged from the program due to her noncompliance with the program's requirements.

In spring 2018, the district court revoked her probation. She spent nine months in prison. In December 2018, the mother was released to BeJe Clark halfway house. By February 2019, the mother engaged in outpatient substance-abuse treatment. A March 27 progress report noted the mother attended all of her therapy sessions, arriving on time and actively participating.

On March 28, 2019, the juvenile court held a termination hearing. According to the transcript, the mother celebrated one year of sobriety on the day of the hearing. However, she conceded this year-long period of sobriety had been her longest during A.H.'s life.

Following the hearing, the juvenile court terminated the mother's parental rights. The court noted:

> [A.H.] clearly enjoys talking on the phone with his mother daily, but he has spent large portions of his life without living with her, including the last 15 months. Regardless of how happy he is to see her, he does not, and has not been[] able to[,] rely on her to meet his needs. His great-grandmother has done that and their connection is much closer, and much more like that of a parent and child than what he enjoys with [the mother]. He cannot continue to live like this forever.

Following the termination order, the mother's counsel filed a motion to withdraw, citing her lack of support staff and the mother's interest in having counsel

"who routinely handles appeals." The court granted the motion and appointed appellate counsel.

The mother appealed. Our supreme court transferred the case to this court.

## II. Due Process and Ineffective Assistance

As a preliminary issue, we address the mother's argument that her due process rights were violated when the juvenile court granted trial counsel's motion to withdraw. She contends that, because she is represented by different counsel on appeal, and because the termination transcript was not available prior to the petition deadline, her appellate counsel is necessarily ineffective. The State argues the mother failed to preserve error on this issue because she neither appealed the order permitting counsel to withdraw nor asked the juvenile court to reconsider the order. *Cf. In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

We question whether error was preserved. Assuming it was, however, we conclude the mother is not entitled to relief. This court rejected a nearly identical claim in *In re T.S.*, 868 N.W.2d 425, 432–34 (Iowa Ct. App. 2015). As in *T.S.*, we see no reason why appellate counsel here could not obtain sufficient information by reviewing the court file, consulting with trial counsel, and discussing the case with the mother. *Id.* at 434 ("Even in the extraordinary situation where trial counsel does not prepare the petition on appeal, the new attorney would most likely be able to consult with trial counsel and the client, as well as be able to review the court file." (citation omitted)). We reject the mother's due process and ineffective-assistance claims.

**III. Merits of Termination**

**A. Standard of Review**

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented." *In re C.S.*, No. 13-1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

**B. Analysis**

We use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must determine whether a ground for termination under Iowa Code section 232.116(1) (2019) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473. Finally, we must consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

*1. Grounds for Termination*

Our first step is to determine if a ground for termination under section 232.116(1) has been established. *See id.* at 472–73. "The State has the burden of proving the grounds for termination by clear and convincing evidence." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997).

Here, the juvenile court terminated the mother's rights pursuant to section 232.116(1)(f). The mother does not challenge the statutory grounds authorizing termination. Therefore, we need not address this step. *See P.L.*, 778 N.W.2d at 40 ("Because the [parent] does not dispute the existence of the grounds . . . we do not have to discuss this step.").

### *2. Best-Interest Framework*

Our next step is to consider the best-interest framework set forth in section 232.116(2). *A.S.*, 906 N.W.2d at 473. Section 232.116(2) provides in relevant part:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

*See* Iowa Code § 232.116(2)(a), (b), (c) (identifying factors that may be relevant to the court's best-interest analysis).

Applying this framework here, we conclude termination of the mother's parental rights is in A.H.'s best interest. We look to the past for indicators of what is likely to occur in the future. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997))). A.H.'s past has been a life of uncertainty in which his great-grandmother provided the majority of his care while his mother abused methamphetamine and other drugs. While the mother's year-long period of sobriety is commendable, she was under supervision for the

duration of that year. We are unable to assume that her future unsupervised conduct will differ from her past.

### 3. Exceptions

Next, we consider section 232.116(3), which provides as follows:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> (a) A relative has legal custody of the child.
> (b) The child is over ten years of age and objects to the termination.
> (c) There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
> (d) It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
> (e) The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

"[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. Here, the mother does not assert any exception to termination applies. We conclude this step is satisfied.

### 4. Additional Time

Finally, we consider the mother's contention the juvenile court erred in declining to provide an additional six months to work toward reunification. The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Here, the mother argues the need for removal will be obviated in the near future when she moves into different housing. She describes herself as "a parent that wants to be a parent, but has yet to really have the opportunity." We disagree. The mother had years to parent A.H. properly. She failed to do so. Although the mother recently made personal improvements while under supervision, her history reveals serious deficiencies that she is unlikely to resolve within six months. The juvenile court was correct in declining to further delay termination.

## IV. Conclusion

For the reasons stated, we conclude the juvenile court properly terminated the mother's parental rights.

**AFFIRMED.**