# IN THE COURT OF APPEALS OF IOWA

No. 19-0836
Filed August 7, 2019

**IN THE INTEREST OF J.C., M.C., and J.C.,**
**Minor Children,**

**J.E., Mother,**
        Appellant,

**C.E., Father of J.C. and M.C.,**
        Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Scott Strait,

District Associate Judge.


        Parents separately appeal from the termination of their respective parental

rights to their children.  **AFFIRMED ON BOTH APPEALS.**


        J. Joseph Narmi, Council Bluffs, for appellant mother.

        Maura C. Goaley, Council Bluffs, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Marti D. Nerenstone, Council Bluffs, guardian ad litem for minor children.


        Considered by Tabor, P.J., and Mullins and May, JJ.

**MAY, Judge.**

The juvenile court terminated a mother and father's parental rights to their children, M.C. and Je.C. The juvenile court also terminated the mother's parental rights to another child, Jo.C.[1] On appeal, the mother contends the juvenile court erred in (1) denying her motion to reopen the record; (2) finding that statutory grounds for termination exist; (3) finding that termination is in the children's best interests; and (4) finding that no exception to termination applies. The father of M.C. and Je.C. (the father) contends the juvenile court erred in (1) finding that statutory grounds for termination exist and (2) finding that termination is in the children's best interests. We affirm the juvenile court.

**I. Background Facts and Proceedings**

Jo.C. was born in 2004. Twins M.C. and Je.C. were born in 2009. This family came to the attention of the Iowa Department of Human Services (DHS) in 2009 because of allegations that the mother had denied critical care to the children.[2] DHS determined the allegations were founded.

In 2013, DHS reported two more founded allegations of child abuse against the mother. The family voluntarily engaged in DHS services. In March 2013, law enforcement took the children into protective custody. In May, the juvenile court adjudicated each of the children as a child in need of assistance (CINA). The mother struggled to control her emotions and react appropriately to stressors. Even so, by March 2014, M.C. and Je.C. were returned to their parents' care

---

[1] No father appeals the termination of parental rights with respect to Jo.C.
[2] A fourth child was also identified as a victim in the 2009 assessment. Because that child is now over eighteen, parental rights to that child are not at issue.

subject to DHS supervision. Jo.C. was to be returned to the mother's care by the end of April. In July, the juvenile court dismissed the CINA proceedings as to all children.

But then, in July 2016, the juvenile court again removed the children from the home following a domestic-violence incident perpetrated by the mother. The father reported that the mother struck him with a piece of wood "with nails in it," struck him a "heavy glass prism," and stabbed him with a broken snow globe. The father required three to four medical staples in his head and seven in his side.

In August, the juvenile court adjudicated each of the children as CINA. The court found "there are concerns of domestic violence, mental health, and substance abuse" regarding the mother and father.

The mother was placed on probation for assaulting the father. Her probation was revoked after she tested positive for methamphetamine. She was in jail from January to June 2017.

In June, the juvenile court closed the CINA proceedings. The court placed M.C. and Je.C. in the father's care. In a separate proceeding, the district court appointed a guardian for Jo.C.

The mother returned to jail in August. The father attempted suicide the same month.

By September, DHS became involved with the family again. The mother remained in jail. The father exhibited signs of methamphetamine use. He was homeless while caring for the children. The juvenile court removed M.C. and Je.C. from their father's care. In October, Jo.C.'s guardian admitted to

methamphetamine use and being homeless.  In November, the court adjudicated all three children as CINA.

On February 15 and 26, 2019, the juvenile court held a termination hearing.  On May 5, the mother moved to reopen the record.  She sought leave to submit documentation showing she completed the Iowa Domestic Abuse Program (IDAP) after the termination hearing.  On May 6, the court denied the motion and terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2018).  The court also terminated the father's parental rights pursuant to code section 232.116(1)(e) and (f).

Both parents appealed.  Our supreme court transferred the case to this court.

## II. Reopening the Record

As a preliminary issue, we address the mother's claim that the juvenile court erred in denying her motion to reopen the record.  "We review the denial of motions to reopen the record for an abuse of discretion.  In order to show an abuse of discretion, a party must show the juvenile court's action was unreasonable under the attendant circumstances."  *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).

Here, the mother moved to reopen the record about two and a half months after the termination hearing.  She sought to introduce evidence that she completed IDAP *after* the termination hearing.  On the final day of the hearing, the mother testified that she had only completed sixteen of the twenty-five required IDAP classes.

"When a juvenile court diligently enters a termination order after a hearing, there is generally no basis to complain about a discretionary refusal of the juvenile

court to reopen the record, particularly when the evidence was available to the parties at the time of the hearing." *Id.* In the present action, we find the juvenile court diligently entered the termination order following the hearing.[3] Moreover, the mother was able to testify about her progress with IDAP at the termination hearing. Finally, we note the mother's failure to complete IDAP before the hearing was her own fault. We will not encourage parents to wait until the eve of termination to address their parenting deficiencies. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (noting a parent cannot begin to express an interest in parenting at the eve of termination).

We find no abuse of discretion in the juvenile court's refusal to reopen the record.

## III. Merits of Termination

### A. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented." *In re C.S.*, No. 13-1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

### B. Analysis

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must

---

[3] The juvenile court took judicial notice of one guardianship file and nine CINA files at the termination hearing, which required the court's review prior to entry of its order.

determine whether a ground for termination under section 232.116(1) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Finally, we must consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

### 1. Grounds for Termination

Our first step is to determine if a ground for termination under section 232.116(1) has been established. *See id.* at 472–73. "The State has the burden of proving the grounds for termination by clear and convincing evidence." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address grounds for termination under Iowa Code section 232.116(1)(f) with respect to both parents.

Section 232.116(1)(f) authorizes termination of a parent's parental rights when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Here, both parents challenge element four: whether the children could be returned to their care. Following a careful review of the record, we agree with the juvenile court's conclusion "that the children cannot now return to the care of either parent."

At the heart of the issue is the mother's conduct. She fails to appreciate the detrimental impact of her conduct on her children. She continues to behave in a manner incompatible with parenting. For example, during the pendency of the most recent CINA proceedings, she created a significant disturbance at a medical appointment for Je.C. It was so severe that the medical provider requested the mother not attend any future appointments.

In another instance, the mother behaved in an inappropriate manner with other medical staff. The mother requested a second opinion related to Je.C.'s medical treatment. When a second provider concluded Je.C.'s physician was appropriately managing Je.C.'s care, the mother became "irate." She then claimed someone at a medical facility had stated Je.C. needed immediate care to avoid kidney dialysis. Her claim was not factually supported.

The mother was also banned from the local YMCA after she called and harassed the facility's staff on a daily basis. As a result of this conduct, the family could not carry out visitation at the facility.

Consider also the following concerns, which were raised in a June 2018 DHS report:

> There are concerns with [the mother]'s anger. In the past [the mother] has tried to kill [the father] in front of [Je.C.] and [M.C.] [Jo.C.'s guardian] has reported that [the mother] has tried to run him over with her car and [the mother] continues to deny the allegations of trying to suffocate [M.C.] There was also an incident in December of 2017 were (sic) [the mother] and [the father] broke into [Jo.C.'s guardian]'s home and [the mother] started physically assaulting

[Jo.C.'s guardian]. When confronted[,] [the mother] admits to being in the home but denies she became physically aggressive even though [Jo.C.'s guardian] was able to call [an FSRP provider] and she was able to hear the commotion in the background.

Like the mother, the father also chooses inappropriate conduct. As noted above, he accompanied the mother when she broke into Jo.C.'s guardian's home. On another occasion, he grabbed Jo.C. by the neck in a hospital parking lot. A police officer had to intervene. During a supervised visit in January 2019, the father bit M.C. when the supervisor was in the restroom. The bite caused a bruise to M.C.'s arm.

These and other instances show that the children cannot be safely returned to either parent. We recognize, however, "[t]he State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent." *C.B.*, 611 N.W.2d at 493. Here, both the mother and the father argue they did not receive reasonable efforts. The mother asserts DHS unfairly framed facts in a negative manner in its reports. She also claims DHS improperly limited her visitation.

"When assessing reasonable efforts, the safety and health of the children 'shall be the paramount concern.'" *In re K.W.*, No. 2-560, 2002 WL 1842962, at *1 (Iowa Ct. App. Aug. 14, 2002) (quoting Iowa Code § 232.102(10)(a) (2001)); *accord* Iowa Code § 232.102(12)(a) (2018). Although we expect DHS to report accurately, we know of no other requirement that DHS "frame" facts in a particular manner. Rather, reasonable efforts focuses "on services to improve parenting." *C.B.*, 611 N.W.2d at 493. This "includes visitation designed to facilitate reunification while providing adequate protection for the child." *Id.*

Although the mother only received two hours of supervised visitation per week, we find that was reasonable given the circumstances. While the mother made strides with her substance-abuse issues and housing, her temperament remained volatile. The children are fearful of the mother. They have to be careful not to upset her so she doesn't "freak out." Given these circumstances—and the compelling need to protect the health and safety of the children—we believe limited visitation was wholly justified. *See id.* (placing "emphasis on the health and safety" of children when considering reasonable efforts).

The father also claims DHS improperly limited his visitation. Like the mother, the father made strides over the course of this case, attending therapy and addressing his substance-abuse issues. At the same time, DHS was well aware of his history of regressing. For example, when Je.C. and M.C. were placed in his care following a prior CINA case, the father began using methamphetamine within about two months. We will not require DHS to ignore its long history of involvement with this family. Moreover, after the father received an additional visitation per week, he bit M.C. The bite was not gentle—it left marks. Given this sort of conduct, we cannot fault DHS for limiting the father's visitation.

In short, although DHS made reasonable efforts toward reunification, the children could not be safely returned to the mother or the father. A statutory ground for termination has been established. The first step of our analysis is complete.

### 2. Best-Interest Framework

Our next step is to consider the best-interest framework set forth in section 232.116(2). *A.S.,* 906 N.W.2d at 473. Section 232.116(2) provides in relevant part:

In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

See Iowa Code § 232.116(2)(a), (b), (c) (identifying factors that may be relevant to the court's best-interest analysis).

Applying this framework here, we look to this family's past for indicators of what is likely to occur in the future. See In re J.E., 723 N.W.2d 793, 798 (Iowa 2006) ("When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." (quoting In re C.K., 558 N.W.2d 170, 172 (Iowa 1997))). We find neither parent has been able to provide their respective children with a safe and stable home. The children need and deserve permanency and stability that these parents have not been able to provide. Termination is in the children's best interests. See A.B., 815 N.W.2d at 777–78. The second step of our analysis is complete.

### 3. Exceptions

Finally, we consider section 232.116(3), which provides as follows:

The court need not terminate the relationship between the parent and child if the court finds any of the following:
(a) A relative has legal custody of the child.
(b) The child is over ten years of age and objects to the termination.
(c) There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
(d) It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
(e) The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

"[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. If the parent proves an exception, this court *may* conclude termination is inappropriate. *Id.* We are not, however, *required* to reach that conclusion. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Rather, we exercise our discretion "based on the unique circumstances of each case and the best interests of the child" to determine whether the parent-child relationship should be saved. *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)).

The father does not assert any exception applies. The mother, however, argues the strength of the parent-child bond should preclude termination pursuant to section 232.116(3)(c). We disagree. Jo.C. testified he did not want to have any contact with his mother. Je.C. and M.C. are fearful of the mother. While there is evidence they love their mother, nothing suggests their bond with her is strong enough to overcome her parenting deficiencies. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the children]'s developing needs."). The final step of our analysis is complete.

## IV. Conclusion

The juvenile court properly terminated the mother and the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**