**IN THE COURT OF APPEALS OF IOWA**

No. 20-0566
Filed June 17, 2020

**IN THE INTEREST OF D.A., D.A., and D.F.,**
**Minor Children,**

**T.F., Mother,**
　　Appellant.
_____


　　Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic,

District Associate Judge.


　　A mother appeals the juvenile court decision terminating her parental rights.

**AFFIRMED.**


　　Elizabeth M. Wayne of Papenheim Law Office, Parkersburg, for appellant

mother.

　　Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

　　Cynthia Schuknecht of Noah, Smith, Schuknecht & Sloter, P.L.C., Charles

City, attorney and guardian ad litem for minor children.


　　Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother appeals the juvenile court decision terminating her parental rights. We conclude there is clear and convincing evidence in the record to show the children could not be safely returned to the mother's care and her parental rights were properly terminated. We find the services provided to the mother were reasonable under the facts of the case. We determine termination of the mother's parental rights is in the children's best interests and none of the exceptions to termination should be applied. We affirm the juvenile court.

## I. Background Facts & Proceedings

T.F. is the mother of Da.A., born in 2003; De.A., born in 2005; and D.F., born in 2008.[1] The children were removed from the mother's care on December 19, 2018, due to the mother's substance-abuse issues, mental-health issues, and general lack of stability. There were also concerns about the mother's supervision of the children. After the removal, the mother moved out of Iowa. She did not have any contact with the Iowa Department of Human Services (DHS) for approximately six weeks.

The children were adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) (2018). The mother then moved back to Iowa. She had a psychological evaluation and was diagnosed with borderline personality disorder. The psychologist expressed concern that the mother "may not prioritize the needs of her children before her own needs."

---

[1] The father of Da.A. and De.A is deceased. The father of D.F. has not appealed the termination of his parental rights.

The mother exhibited a pattern of dishonesty with social workers throughout the case. She stated she was employed but submitted only handwritten invoices that appeared to be in her handwriting to support her claim. The company she named as her employer had no knowledge of her. The mother stated she had to move because there was a fire at her duplex, but social workers discovered she had been evicted for nonpayment of utilities and rent. At one point the mother paid the landlord with counterfeit bills. She attempted to use fraudulent checks. Furthermore, while the mother tested negative for scheduled drug tests, she did not appear for any random drug tests.

The mother requested additional visitation, and DHS attempted to accommodate her by adding a second visitation each week on Wednesdays. The mother did not appear for these additional visits, stating she was working, although as noted above, there was no evidence she actually had a job. DHS stopped offering the Wednesday visits because the mother was not attending them.

The children had psychological evaluations. It was recommended that Da.A. remain in his current placement with a family friend. Da.A. stated he did not feel he would be successful if returned to his mother's care. De.A. was diagnosed with conduct disorder and attention deficit hyperactivity disorder. Due to his behavior, he was placed in a group shelter home. He suffers from extreme anger and needs intense, ongoing therapy. His behaviors are aggravated by his mother, who is manipulative and dishonest with him. D.F. was diagnosed with depression, post-traumatic stress disorder, and an anxiety disorder. The psychologist's report states D.F. "is in need of a stable, nurturing, and protective environment." The children participate in individual therapy.

On December 18, 2019, the State filed a petition seeking termination of the mother's parental rights. The mother filed a motion for reasonable efforts on January 8, 2020, claiming DHS should do more to reschedule visits missed for any reason, encourage the children to attend visits, and reinstate the Wednesday visits.

The termination hearing was held on March 12, by which time the mother was back living in the duplex. She had two visits each week, and all previous missed visits had been made up. The mother's visitation was described by a DHS social worker as "sporadic and very chaotic throughout the life of the case." The mother testified she was attending an intensive outpatient treatment program. De.A. appeared for the hearing by telephone and stated he wanted to return to his mother's care.

The juvenile court entered an order on March 20 terminating the mother's parental rights under section 232.116(1)(f) and (*l*) (2019). The court found termination of the mother's rights was in the children's best interests, stating, "Mother is not going to now or in the foreseeable future be in a position to consistently meet their needs. She has shown a preoccupation with her needs over those of the children and there is no reason to believe that will change." The court also found none of the exceptions in section 232.116(3) should be applied. The court found, "Any sadness the child[ren] may experience because of termination does not overcome the likely long-term hardship and neglect the child[ren] will suffer if in the care of [the mother]. The Court simply cannot find that the parent-child relationship is so strong that it outweighs the need for termination." The mother appeals the termination of her parental rights.

## II.     Standard of Review

Our review of termination proceedings is de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  The State must prove its allegations for termination by clear and convincing evidence.  *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."  *Id.*  Our primary concern is the best interests of the child.  *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.     Sufficiency of the Evidence

The mother claims there is not clear and convincing evidence in the record to support termination of her parental rights.  She states the children could be returned to her care and there is insufficient evidence to show she had a severe substance-abuse related disorder.  "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm."  *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015).  We focus on section 232.116(1)(f).

The mother only disputes the fourth element of section 232.116(1)(f), which requires a showing of "clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102."  We consider whether the child can be safely returned to the parent's care.  *See In re I.L.*, No. 14-0672, 2014 WL 4631555, at *2 (Iowa Ct. App. Sept. 17, 2014).  The phrase "at the present time" means at the time of the termination hearing.  *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

The children were removed from the mother's care due to the mother's substance-abuse issues, mental-health issues, and general lack of stability, as well as concerns about the mother's supervision of the children. Those concerns remained at the time of the termination hearing. The mother did not successfully complete a substance-abuse treatment program. She attended therapy for her mental health for a period of time but quit in December 2019. Furthermore, the mother continued to exhibit instability in her housing and employment and by engaging in criminal conduct. We conclude there is clear and convincing evidence in the record to show the children could not be safely returned to the mother's care. We determine her parental rights were properly terminated under section 232.116(1)(f).

## IV.    Reasonable Efforts

The mother asserts the State did not engage in reasonable efforts to reunite her with the children. She states that she should have received more visitation with the children.

While the State had the obligation to make reasonable efforts, it is the parent's responsibility, prior to the termination hearing, to demand services that they are not offered. *In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997). "The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

The mother requested additional visitation with the children, and DHS attempted to comply with her request. The mother did not attend the extra

visitation time offered to her, so DHS discontinued offering the additional time. By the time of the termination hearing, the mother was having two visits each week. Her attendance at visitation was described as sporadic and chaotic. We find the services provided to the mother were reasonable under the facts of the case, as she did not take full advantage of all of the visitation offered to her. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) ("[T]he department must assess the nature of its reasonable efforts obligation based on the circumstances of each case.").

## V. Best Interests

The mother contends termination of her parental rights is not in the best interests of the children. "When we consider whether parental rights should be terminated, we 'shall give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren].'" *In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

The mother has had a negative impact on the children. The juvenile court noted the children did not always want to attend visits, or when they attended, they wanted to leave early. The mother engaged them in inappropriate conversations about the juvenile court proceedings and blamed others for her situation. The court found the mother committed theft during one visit by leaving a bowling alley without

paying while accompanied by the children. We agree with the juvenile court's conclusion the "[m]other is not going to now or in the foreseeable future be in a position to consistently meet their needs." We determine termination of the mother's parental rights is in the children's best interests.

As part of her best-interests argument, the mother claims the juvenile court should have decided not to terminate her parental rights based on the closeness of the parent-child relationship and because the children objected to the termination. *See* Iowa Code § 232.116(3)(b), (c). The provisions in section 232.116(3) are permissive, not mandatory. *A.M.*, 843 N.W.2d at 113.

Although the mother presented evidence to show the children opposed termination, the court found they had been pressured by the mother to take this position. The court also found the evidence did not show termination of the mother's rights would be detrimental to them. The court concluded termination was in the children's best interests and declined to apply any of the exceptions found in section 232.116(3). On our careful review of the record, we agree with the court's determination.

We affirm the juvenile court's decision terminating the mother's parental rights.

**AFFIRMED.**