# IN THE COURT OF APPEALS OF IOWA

No. 24-1225
Filed October 2, 2024

**IN THE INTEREST OF Z.H.,**
**Minor Child,**

**C.C., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Calhoun County, Joseph McCarville,

Judge.


        The mother appeals the termination of her parental rights to one child.

**AFFIRMED.**


        Mary M. Lauver of Lauver Law, Lake City, for appellant mother.

        Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

        Mark J. Rasmussen, Jefferson, attorney and guardian ad litem for minor

child.


        Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the mother's parental rights to Z.H., born in November 2022, pursuant to Iowa Code section 232.116(1)(e), (g), (h), (k), and (*l*) (2023).[1] The mother appeals, arguing (1) the juvenile court erred by failing to file a permanency order or make a ruling as to whether she should get additional time for reunification under section 232.104(2)(b); (2) "[t]he court erred in finding clear and convincing evidence that the child[] could not be returned under Iowa Code [section] 232.116"; (3) the Iowa Department of Health and Human Services (the department) failed to make reasonable efforts; (4) the court was wrong to find termination was appropriate under section 232.116(2) and (3) because the guardian ad litem (GAL) failed to fulfill the duties required by section 232.2(25)(b). Following our de novo review of the record, we affirm.

**I. Background Facts and Proceedings.**

The mother and father were previously involved with the department regarding another child, and their parental rights were terminated to that child in 2017 based on unresolved issues with substance abuse and mental-health needs.

The department again became involved with the family in March 2023—when Z.H. was about five months old—after police were called for a domestic violence incident involving the parents. The mother admitted to being under the influence of methamphetamine at the time. The father maintained he was sober, and the child was originally allowed to stay with the father and the paternal

---

[1] The father's parental rights were also terminated; he does not appeal.

grandmother. After the father and paternal grandmother both tested positive for methamphetamine, Z.H. was formally removed from the parents' custody in June.

Between the removal in June 2023 and the termination trial in June 2024, the mother continued to use marijuana, methamphetamine, and heroin. She completed substance-use treatment twice but relapsed once she returned to the community. She committed multiple crimes during the same period[2] and, at the time of the termination trial, was being held in county jail awaiting an open bed at an inpatient treatment center, which she was required to complete as part of her probation requirements. After completing treatment, she would be required to stay at a sober living home.

The mother's contact with Z.H. was sporadic. Due to her use of illegal substances and her unavailability due to time spent in jails in different counties (from February 2024 until June 2024), the mother sometimes went long stretches without having contact with Z.H. And she admitted that of the more than fifty visits she was offered with the child, she attended approximately ten.

At the termination trial, the mother asked the juvenile court to give her six more months to work toward reunification. The mental health social worker the mother worked with while in jail testified on the mother's behalf, outlining the reasons she believed the mother could be successful in achieving sobriety this

---

[2] The mother was charged with and convicted of possessing prescription drugs (oxycodone) in June 2023, operating while intoxicated in July, second-degree theft in October, and assaulting a peace officer and third-degree theft in December. Because at least a few of these crimes took place while the mother was already on probation, warrants were issued for her arrest, and she was incarcerated at one of several county jails beginning in February 2024 and through the date of the termination trial.

time, such as the fact that the mother had more sober time (due to being incarcerated), which let her brain heal and allow for better decision making before eventually entering a treatment program. The social worker opined the mother could have custody of Z.H. returned to her in six months. But, the department social worker case manager testified that the mother had never demonstrated the ability to be a caretaker for the child and instead could not maintain sobriety for more than a week once released from treatment.

The juvenile court terminated the mother's parental rights under section 232.116(1)(e), (g), (h), (k), and (*l*). The mother appeals.

## II. Standard of Review.

We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). That means "we review the facts as well as the law and adjudicate rights anew." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) (citation omitted). In doing so, we give weight to the fact findings of the juvenile court, especially when considering credibility of witnesses, but we are not bound by them. *See In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997) ("Where there is conflicting evidence on some issues, we give consideration to the juvenile court on issues of credibility.").

## III. Discussion.

We generally employ a three-step analysis to review a termination of parental rights, asking whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a permissive exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

Here, we start with the mother's broad argument that "[t]he court erred in finding clear and convincing evidence that the child[] could not be returned under Iowa Code [section] 232.116." When a parent's rights are terminated under multiple statutory grounds, we may affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). And generally, when a parent fails to challenge a specific ground relied on by the juvenile court, we affirm on that ground or grounds without further consideration. *See, e.g.*, *In re J.R.*, No. 23-1838, 2024 WL 261320, at *1 (Iowa Ct. App. Jan. 24, 2024) (recognizing a parent who failed to articulate any challenge to termination under a specific ground waived their challenge to termination on that ground); *accord id.* (collecting cases). The mother does not explicitly challenge any of the five statutory grounds relied upon by the juvenile court. And insofar as we understand her petition on appeal to challenge the ground for termination under paragraph (h), which includes the element that the child cannot be returned to the custody the parent at the time of the termination trial, any such challenge is disingenuous. The mother remained in county jail at the time of the termination trial; Z.H. could not be returned to the mother's custody while she was incarcerated. The statutory grounds for termination were met.

The mother also argues the department failed to make reasonable efforts at reunification. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (recognizing that "[t]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent"). To preserve error on a reasonable-efforts challenge, the parent is required to alert the juvenile court to any claimed deficiency in services "at the removal, when the case permanency

plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). This means a parent must alert the court to any perceived deficiencies prior to the termination hearing. *See In re C.G.*, No. 21-1422, 2022 WL 108544, at *2 (Iowa Ct. App. Jan. 12, 2022) (collecting cases). When a parent fails to timely request additional or different services, the parent waives any reasonable-efforts challenge. *C.H.*, 652 N.W.2d at 148. Here, the mother packages a more general complaint—that the department "purposefully trigger[ed her by] telling the mother that she will not succeed[] and not making regular contact with the mother"—as a reasonable efforts challenge. Even if we understood the complaint to properly fall within the department's mandate to make reasonable efforts, the mother did not raise the issue to the juvenile court early enough to preserve error. We do not consider this further.

Next, the mother combines a challenge against the juvenile court's conclusion that termination is in Z.H.'s best interests and no permissive exception under section 232.116(3) applies to preclude termination and the fact that the GAL failed to fulfill the duties outlined in section 232.2(25)(b). To that later point, the juvenile court recognized the GAL "failed to comply with the statutory duties" outlined by the Code. The mother objected on that same basis at the termination trial and emphasized the court should not consider the GAL's recommendation, but she did not ask for a continuance of the hearing, which could have been granted as a remedy in this case based upon the GAL's inaction. As such, we conclude the mother did not preserve error regarding whether a continuance or any other remedy should have been granted and we analyze only whether the statutory violation requires reversal of the juvenile court's best-interest decision.

After the mother objected to the recommendation at the end of the trial, the GAL responded, "Your Honor, this is a contested matter. If you desire, I will file a written report but I can make my recommendation at this time *based on the record that has been made here today.*"[3] (Emphasis added.) Trouble is, the statute requires that the recommendation be supported by knowledge gained by conducting interviews; making home visits; attending hearings; and obtaining firsthand knowledge of facts, circumstances, and parties involved to represent the child's best interests. *See* Iowa Code § 232.2(25)(b). Thus, there was no showing made at the time of the termination trial that the GAL fulfilled its "investigative role." *In re A.D.*, No. 24-0232, 2024 WL 2045988, at *7 (Iowa Ct. App. May 8, 2024) ("It is not enough for the GAL to passively take in the evidence at the termination hearing and later share a recommendation with the court.").

But, unlike in *A.D.*, here, the juvenile court specifically made a finding that it did not rely on the GAL's recommendation in reaching its decision to terminate, which might have been "critically important" if this were a "marginal case and a close call." *Cf. id.* at *5 (relying on GAL's revised recommendation when deciding to terminate parental rights). In other words, the court essentially granted the mother's request to exclude the GAL's recommendation as a remedy. The court struck the right balance—stating:

> The court agrees that the GAL has failed to comply with the statutory duties set out above. This, however, does not save the parents from termination. If this were a marginal case and a close call, the GAL's independent interviews and reports might be critically important. This is not a close case. The State has produced abundant, clear and convincing evidence that . . . [the mother] is

---

[3] Almost two weeks after the termination trial, the GAL filed a short report with few specifics about his compliance with section 232.2(25)(b).

> unable to regain custody of [Z.H.] due to continued criminal behavior and incarceration, untreated mental health issues, continued use of controlled substances, failure to participate in offered services, homelessness, unemployment, and a prior termination of her parental rights to a previous child.

In our de novo review, we agree with the juvenile court that termination is in Z.H.'s best interests. According to the mother's testimony, she relapsed in February 2023—when Z.H. was approximately three months old. And when the department first became involved in March, the father reported Z.H. was primarily living with him and the paternal grandmother, while the mother was sometimes allowed to visit. During the year Z.H. was formally removed from the mother's custody, the mother had only about ten interactions with the child. The family support specialist who supervised visits between the mother and Z.H. opined that Z.H. does not share a bond with the mother. In contrast, both the case manager and the family support specialist testified that Z.H. is bonded with her foster parents, who are willing to adopt her. *See* Iowa Code § 232.116(2)(b). Because the mother was not able to provide a safe, stable home more than a year after removal, termination of her parental rights is in Z.H.'s best interests. *See In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J. concurring specially) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests."); *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent . . . .").

The mother blames the GAL's failure to fulfill the duties outlined in section 232.2(25)(b) for the lack of evidence to establish that Z.H. and the mother share a bond that precludes termination. *See* Iowa Code § 232.116(3)(c) (allowing

the court to forego termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). But it is the parent's burden to prove an exception to termination should be applied. *See In re A.S.,* 906 N.W.2d 467, 476 (Iowa 2018). We do not mean to suggest that we approve of the GAL's failure to perform statutorily required duties; we strongly urge attorneys to comply with these directives that are to ensure that the best interests of Iowa children are served. But the mother cannot gain the relief she requests by shifting focus to the GAL's inaction. *See In re M.M.*, No. 23-1204, 2023 WL 7015363, at *6 (Iowa Ct. App. Oct. 25, 2023) ("As to the [parent's] complaint about the [GAL's] investigation, the burden was on the [parent]—not the [GAL]—to prove the exception applied.").

Finally, the mother argues the juvenile court should have granted her additional time to work toward reunification with Z.H. pursuant to section 232.104(2)(b). The court can give the parent the requested extension only if the need for removal "will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We recognize the mother's mental health social worker felt optimistic about the mother's chances to achieve sobriety. But this social worker at the jail had known the mother for only two months, which translated into visiting with the mother for a total of only eight to twelve hours, and she did not have the benefit of the mother's previous treatment records. We hope the mother is successful, but our case law prevents us from giving a parent more time based on a mere hope of a different future. *See In re M.S.*, No.23-0828, 2023 WL 5607109, at *3 (Iowa Ct. App. Aug. 30, 2023) ("We will not ask a child to wait longer for permanency on a mere hope of a parent's improvement."); *In re L.H.*,

949 N.W.2d 268, 271–72 (Iowa Ct. App. 2020) ("[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future." (alteration in original) (citation omitted)); *N.F.*, 579 N.W.2d at 341 ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting."). While the juvenile court should have explicitly ruled on the mother's request for additional time, following our de novo review, we cannot say the need for Z.H.'s removal from the mother's custody will no longer exist in six months. At the time of the termination trial, the mother was still in county jail waiting for an open bed at a residential treatment facility, and even after she completed treatment, she would need to establish and maintain her sobriety in a noncustodial setting. An extension is not warranted here.

We affirm the termination of the mother's parental rights to Z.H.

**AFFIRMED.**