**IN THE COURT OF APPEALS OF IOWA**

No. 25-0539
Filed July 23, 2025

**IN THE INTEREST OF D.A.,**
**Minor Child,**

**K.G., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Warren County, Mark Schlenker,

Judge.


        The mother appeals the termination of her parental rights to one child.

**AFFIRMED.**


        Lori M. Holm, Des Moines, for appellant mother.

        Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

        Magdalena B. Reese, Assistant Public Defender, Des Moines, attorney and

guardian ad litem for appellee minor child.


        Considered without oral argument by Greer, P.J., and Badding and

Chicchelly, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the mother's parental rights to D.A., born in 2022, pursuant to Iowa Code section 232.116(1)(g) and (h) (2024).[1] The mother appeals, asserting (1) she should have been given additional time to work toward reunification; (2) the juvenile court should have denied the termination petition and instead reinstated the bridge order that was entered to close the family's previous child-welfare case; (3) the Iowa Department of Health and Human Services (HHS) failed to make reasonable efforts to reunify her with the child; and (4) the State did not prove the statutory ground for termination pursuant to section 232.116(1)(h).

We review termination proceedings de novo. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). "We review the facts and law, and [we] adjudicate [anew] those issues properly preserved and presented." *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).

We take the issues raised by the mother out of order. First, we note that while the juvenile court relied on two statutory grounds for termination—paragraphs (g) and (h) of section 232.116(1)[2]—the mother challenges only the

---

[1] The State did not seek to terminate the father's parental rights. D.A. was in the father's custody at the time of the termination trial.

[2] The court may terminate parental rights under section 232.116(1)(g) when it finds all of the following:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.

(3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

court's ruling under paragraph (h).[3]  As we need only one ground to affirm, *see In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012), and because the mother's failure to make an argument challenging termination under paragraph (g) constitutes waiver of that issue, *see, e.g.*, *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), we conclude there is clear and convincing evidence for termination under section 232.116(1)(g) without further consideration.

Second, the mother argues HHS failed to make reasonable efforts to reunify her with the child because she was given few opportunities to drug test late in the case.  *See In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997) ("The core of the reasonable efforts mandate is that [HHS] must make reasonable efforts to . . . reunify families in each case.").  As we understand it, the mother suggests she could have proved her sobriety to HHS and the court if she was able to test more often, which would have prompted the court to return D.A. to her custody rather than grant the termination petition.  Our error-preservation rules require a parent "to demand other, different or additional services" from the juvenile court.

---

(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

The court may terminate parental rights under section 232.116(1)(h) when it finds all of the following:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[3] While the heading of the mother's fourth argument mentions section 232.116(1)(g), she does not address any of the elements.

*In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). Here, the mother's petition on appeal suggests she may have orally raised the issue of reasonable efforts at the September 2024 permanency hearing. That may be accurate, but we do not have a transcript of those proceedings to review, and the permanency order only mentions that reasonable efforts have been made and nothing about any requests for services by the mother. *See* Iowa R. App. P. 6.803(1) ("It is the appellant's responsibility to ensure that the transcripts of any district court proceeding needed for resolution of the appeal are included in the record. If the appellant intends to argue on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the record on appeal must include a transcript of all evidence relevant to such finding or conclusion."). And the mother did not raise the issue of reasonable efforts at the termination trial (of which we do have a record) or in a written motion. On the record we have before us, it is not clear the mother ever raised the reasonable-efforts challenge she makes on appeal to the juvenile court. So we must conclude the mother failed to preserve error; we do not consider the merits of this claim. *See Olson v. BNSF Ry. Co.*, 999 N.W.2d 289, 296 (Iowa 2023) (recognizing one of the purposes of error preservation is to ensure the appellate court has "an adequate record for review").

Next, we consider the mother's argument she should have been given additional time to work toward reunification. The court can grant the request for more time if the need for removal will no longer exist at the end of the six-month

extension, *see* Iowa Code §§ 232.104(2)(b), 232.117(5), and the delay in permanency is not contrary to the child's best interests. *See In re W.T.*, 967 N.W.2d 315, 323–24 (Iowa 2021). To decide these issues, we review the facts surrounding the family's involvement with the juvenile court.[4]

D.A. was born in March 2022 and tested positive for methamphetamine and amphetamines at birth. He was adjudicated a child in need of assistance (CINA). The parents agreed to comply with a safety plan that allowed them to keep D.A. in their custody, and both parents participated in substance-use treatment. The CINA case closed with a bridge order in January 2023, which gave the mother and father joint legal custody and shared physical care of the child. The order required each parent to comply with recommendations from their respective therapist or treatment counselor, refrain from criminal acts, and abstain from alcohol and illegal substances. It also allowed each parent to request the other complete a drug test.

In July, HHS received allegations the mother was again using methamphetamine. HHS met with the mother and asked her to drug test; she refused to comply. Because of the mother's history of drug use and her refusal to submit to random drug testing, the State filed a CINA petition in September. After the petition was filed, the mother agreed to wear a sweat patch. When she went to have it removed a few weeks later, there was a report that the patch appeared to have been tampered with according to a worker from the drug testing agency.

---

[4] The mother's parental rights to at least three other children have been terminated; each case involved the mother's use of methamphetamine. We limit our recitation of facts to those involving D.A. specifically.

Following a contested hearing, the juvenile court granted the petition and removed D.A. from the mother's custody, ruling:

> The patch overlay had a torn edge, its numbers did not look right[,] and "pharmchem" did not look right. The photos [admitted at the hearing] clearly don't look like the patch that was put on. . . . The Court finds the testimony of mother was not credible on the issue of the patch. Mother, despite her long experience with [HHS] elected to ignore the request to provide specimen and relied on not doing random test and expect it to suffice. The Court considers her [HHS] history and that she is not a babe in the woods.

The mother appealed, and a panel of this court affirmed both the adjudication and removal. *See generally In re D.A.*, No. 24-0094, 2024 WL 3290377 (Iowa Ct. App. July 3, 2024).

Meanwhile, from January 2024 through the first day of the termination trial on December 18, the mother was asked to drug test eighteen times. She missed or did not complete thirteen of those drug tests. Of the five she did complete, three were negative for illegal substances. And two of the tests—one sweat patch worn in January and February and another worn in October and November—were positive for methamphetamine. During this same period, the mother also generally failed to engage in substance-use treatment and mental-health therapy, although both were part of the case permanency plan the court adopted.

At the three-day termination trial,[5] the mother maintained she had not used methamphetamine since the date of D.A.'s birth in March 2022; she argued the positive drug tests were not reliable. Still, she was beginning to attend mental-health therapy and had a substance-use evaluation scheduled for early February.

---

[5] The trial took place on December 18, 2024, and January 8 and 29, 2025.

Like the juvenile court, we conclude the positive drug tests are credible evidence of the mother's continued use of methamphetamine despite her claims to the contrary. And we consider those test results in conjunction with the mother's numerous missed tests, several of which occurred after the mother rejected offered transportation from HHS or refused to comply with testing when it was scheduled to take place in her own home. Without persuasive excuses for these missed tests, we can presume they would be positive for illegal substances. *See, e.g.*, *In re A.T.*, No. 25-0119, 2025 WL 1085210, at *3 (Iowa Ct. App. Apr. 9, 2025) (presuming all missed tests would be positive for illegal substances when the parent had "no persuasive excuse" for the missed tests and collecting cases where missed tests were presumed positive). We conclude the mother continued to use methamphetamine throughout the child-welfare case. Yet as of the termination trial, the mother had yet to admit her use and had not engaged in any treatment. With this backdrop, we cannot say the need for removal would be remedied if she was given an additional six months to work toward reunification. We agree with the juvenile court that additional time is not warranted.

Finally, the mother argues the juvenile court should have re-implemented the bridge order that was entered to close the 2022 CINA rather than granting the termination petition; she asserts the bridge order has sufficient safeguards to keep D.A. safe—even in the face of questions about her sobriety. The juvenile court denied her request, concluding it was not a "viable option" because it "would merely expose the child to more unsupervised visitation and more years of uncertainty regarding the child's future. In addition, it would prolong the issue of drug testing and open the child to more uncertainties and vulnerabilities in custody

of the mother." We agree. While we hope the mother is able to achieve and maintain sobriety, we look to her years of drug use and the absence of consistent, safe parenting when attempting to forecast what the future may entail. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[A] good prediction of the future conduct of a parent is to look at the past conduct. Thus, in considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future." (internal citation omitted)). With that in mind, we agree with the juvenile court that termination of the mother's rights is in D.A.'s best interests. *See In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests.").

We affirm the termination of the mother's parental rights.

**AFFIRMED.**